2  127
29  501

## HENRY GAY *v*. THE STATE.

1. INDICTMENT.—An indictment may be grammatically incorrect, and may vary from the standard precedents, and, nevertheless, be good, provided it admits of a plain and intelligible construction, and charges the offense with sufficient accuracy to protect the accused from prejudice, and to enable him to plead the judgment on it in bar of another prosecution.

2. EVIDENCE.—A state's witness having, on cross-examination, denied that he bore ill-will to the accused, the latter proposed to prove by another witness that the former was of a revengeful and relentless disposition; to which inquiry objection for immateriality was sustained. *Held*, correct, and the proposed proof properly excluded.

3. SAME—VERBAL CONFESSIONS of guilt, when deliberate and voluntary, are effectual as proof, but, nevertheless, should be received and weighed with great caution, because liable to misconstruction, easily fabricated, and often, though false, difficult to contradict.

4. SAME.—See the facts held too inconclusive to sustain a conviction of incest.

APPEAL from the District Court of Harrison. Tried below before the Hon. J. L. CAMP.

The evidence in the case is set out in the opinion. On cross-examination of the state's witness, Charles Robinson, counsel for the accused asked him if he did not bear ill-will to the family of the accused, because the children of witness, and Adeline Gay, his former wife, but the present wife of the accused, lived with the latter and his family. The witness stated that he had no ill-feeling against the accused. The defense proposed to ask the next witness, Dr. Clemons, whether the general character of Samuel Robinson, the first witness, was or was not that of a man of revengeful and relentless disposition. To this inquiry the counsel for the state objected, for immateriality. The court sustained the objection, and the accused took his bill of exceptions.

*J. H. Pope*, for the appellant.

*George McCormick*, Assistant Attorney General, for the State.

ECTOR, J. The defendant, Henry Gay, was indicted on February 16, 1872, for incest.

By the statute of Texas (Pasc. Dig., Art. 2018) it is enacted that "all persons who are forbidden to marry by the succeeding articles, who shall intermarry or carnally know each other, shall be punished by imprisonment in the penitentiary not less than two nor more than ten years."

The next succeeding article reads as follows:

" Art. 2019. No man shall marry his mother, his sister, his father's sister or half sister, his mother's sister or half sister, his daughter, the daughter of his brother or sister or of his half brother or sister; the daughter of his son or daughter, his father's widow, his son's widow, his wife's daughter, the daughter of his wife's son or daughter."

The incest is charged to have been committed by the defendant with one Martha Robinson, the child of the wife of the defendant by a former marriage. The jury found the defendant guilty, and assessed his punishment at two years' confinement in the penitentiary; and he gave notice of an appeal in open court.

The indictment was objected to—

"1st. Because it does not charge any offense against the laws of the state of Texas.

"2d. Because it does not set forth in plain and intelligible words the offense with which defendant is charged.

"3d. Because it does not appear with whom the defendant cohabited in his incest."

The indictment is certainly subject to verbal and grammatical criticism, and it would be difficult to find a precedent for it in any standard work on criminal pleading. Taking it as a whole, the words can be put together and read intelligibly, so as to be comprehended, and it is not obnoxious to the 7th requisite of an indictment, as prescribed in Paschal's Digest, Article 2863. The offense is stated with sufficient legal accuracy to prevent the defendant from being seriously prejudiced in his defense, and the offense charged in the indictment is defined by such circumstances as will enable him, should it be necessary, to plead a previous conviction or acquittal of the same offense. We think that the objections to the indictment were properly overruled.

The next objection made was that the court erred in sustaining the exceptions of the counsel for the state to certain evidence offered by the defendant. The testimony offered was not admissible, and the objection to the same was properly sustained by the court.

It is next objected that the court erred in its charge to the jury. This is in the defendant's motion for a new trial.

9

We find no error committed by the court in its instructions to the jury.

This brings us to the 2d and 3d grounds set out in defendant's motion for new trial—viz., "because the jury found contrary to the evidence;" and "because there is no evidence to support the verdict."

There were only two witnesses who testified in the case, and, as their evidence is not very long, we will copy it just as we find it in the record.

"1st. The state introduced Charles Robinson, who states that he knew the defendant; pointed him out in open court; also knew Martha Robinson. She was his [witness'] daughter, and was the daughter of Adeline Gay, who had been the wife of witness before the war, but was now the wife of defendant, and has lived with defendant as such since the war; that Martha Robinson, the daughter of himself and the present wife of him, defendant, was not married, but had two children; that about nine years ago, the witness thinks, but is certain that it was after the birth of the two children of his daughter, Martha Robinson, defendant came to him, witness—why he came, he [witness] did not know— at the church in Marshall, Harrison county, at night, and said to witness, 'I want to see you.' Witness walked out with defendant a short distance from the church, and then defendant said to witness, 'I want you to forgive me;' that he, defendant, had laid himself liable to have the children of his daughter, Martha Robinson, laid to him, defendant."

"Cross-examination: The witness stated he had said that he thought it was about nine years ago, but was sure that it was after the birth of his daughter's children; further stated that he had no ill-feeling against defendant."

."2d. The state then introduced Dr. Clemons, who stated he knew defendant, also knew Martha Robinson; that

they both lived on his farm in Harrison county, in 1871. Adeline Gay was his cook; Martha Robinson lived in the house with her mother and defendant. On one occasion he [witness] saw, through the window of defendant's house, the defendant fondling with his step-daughter, Martha Robinson, on the bed; that he had frequently seen defendant take the girl, Martha Robinson, off at night, and leave his wife and her mother at home; would say they were going to church, but did not know where they went; that Martha had two children; the children were born after they left his place; could not recollect, or did not know, how long after they left his place until the first child of Martha Robinson was born, but thinks it was nine or ten months, or longer; that they lived with the witness in the year 1871.' "

If the judgment of conviction can be sustained at all, it must be upon the evidence of the witness Charles Robinson, and alone upon the statements or admission which he says were made to him by the defendant.

There was for a long time quite a conflict of authorities, both in England and America, as to whether the confessions of the prisoner, uncorroborated by any of the proof of the *corpus delicti*, were of themselves sufficient to convict him. It has been satisfactorily settled in England that the prisoner may be convicted on his confessions alone. In the United States the adjudicated cases on this point are not harmonious, especially in capital felonies. The confessions of a defendant should be received with great care and caution, owing to the fact that such testimony is so liable to be misunderstood, so easily fabricated, and so hard to be contradicted, as the witness deposing to it often locates the time and place when and where there are no other persons present to contradict his story, if it is untrue. It has been also forcibly and truly urged that the mind, under the pressure of calamity, is easily seduced, and is liable, in the

alarm of danger, to acknowledge indiscriminately a false-
hood or a truth, as different agitations may prevail.

Mr. Blackstone says that " confessions, even in cases of
felony at common law, are the weakest and most suspicious
of all testimony ; ever liable to be obtained by artifice, false
hopes, promises of favor, or menaces ; seldom remembered
accurately, or reported with due precision ; and incapable in
their nature of being disproved by other negative evidence."
4 Bl. Com. 357.

Mr. Greenleaf, in regard to admissions, says : " The evi-
dence of verbal confessions of guilt is to be received with
great caution.    For, besides the danger of mistake from
the misapprehension of witnesses, the misuse of words, the
failure of the party to express his own meaning, and the
infirmity of the memory, it should be recollected that the
mind of the prisoner himself is oppressed with the calamity
of his situation, and that he is often influenced by motives
of hope or fear to make an untrue confession.    *    *    *
The weighty observation of Justice Foster is also to be kept
in mind, that ' this evidence is not, in the ordinary course
of things, to be disproved by that sort of negative evidence
by which the proof of plain facts may be, and often is, con-
fronted.' "    Greenl. on Ev., vol. 1, sec. 214.

" Subject to these cautions in receiving and weighing
them, it is generally agreed that deliberate confessions of
guilt are among the most effectual proofs of the law.    Their
value depends on the supposition that they are deliberate
and voluntary, and on the presumption that a rational being
will not make admissions prejudicial to his interest and
safety, unless when urged by the promptings of truth and
conscience."    Greenl. on Ev., vol. 1, sec. 215.

By reference to the testimony of the witness Charles Rob-
inson it will appear that, if we take what is put in quotation
marks as the entire language and admissions of the defend-

·ant on the occasion referred to in his testimony, when defendant came to witness at the church, he said, " I want to see you," and, when witness walked out with the defendant a short distance from the church, he said, " I want you to forgive me." The testimony of this witness is continued thus : That he, defendant, had laid himself liable to have the children of his daughter, Martha Robinson, laid to him, defendant.

Although the last three lines are not included in quotation marks in the record, we will consider them as intended to have been given as the admissions of the defendant. The witness first said he thought this conversation occurred about nine years before the trial. If he was correct in this, the offense was barred before the indictment was found. The witness stated he was certain this conversation occurred after the birth of the two children of his daughter, Martha Robinson.

Dr. Clemons says that Adeline Gay cooked for him in the year 1871, and that the defendant and Martha Robinson lived that year with him on his premises ; that Martha Robinson's oldest child was born after they left his premises ; he thinks it was nine or ten months afterwards, perhaps longer ; could not recollect, and did not know.

There is no testimony in the record to show where the defendant and his family went after they left Dr. Clemons' place. If the defendant had admitted that he was the father of the first child of Martha Robinson, are the jury warranted by the evidence in saying, beyond a reasonable doubt, that the defendant did carnally know the said Martha Robinson, in Harrison county, before February 16, 1872, the date of the filing of the indictment?

We should receive with great caution the testimony of Charles Robinson, especially when he shows that his memory is so at fault as to the time when such an admission was made to him in regard to his child. In the very doubt-

ful statement of Robinson, that defendant admitted to him that he had laid himself liable to have Martha's children laid to him, the defendant does not say when, nor where, nor how he had laid himself liable to have Martha's children laid to him.

The district attorney doubtless introduced the testimony of Dr. Clemons to strengthen the evidence of Charles Robinson. Dr. Clemons testified that on one occasion he saw the defendant fondling with his step-daughter, Martha Robinson. Webster's Dictionary defines "fondling" as "a. person or thing fondled or caressed; one treated with foolish or doting affection." And "fondle," "to treat with tenderness; to caress; as, a nurse fondles a child." The doctor also says that defendant often took Martha with him from home after night, leaving his wife, stating when they left that they were going to church; and, for aught that appears from the evidence, they may have gone to church.

It is not often the case that we feel it to be our duty to reverse a judgment on the ground that we believe the evidence is not sufficient to support the verdict. In this case we think that the criminal court was not justified in refusing to set aside the verdict and grant a new trial. So lengthy a review of this branch of the case has been deemed necessary for the reason that the judgment must be reversed and the cause remanded for further trial.

*Reversed and remanded.*