# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00711-CR

**The State of Texas, Appellant**

**v.**

**Eric Jerome Lacy, Appellee**

---

**FROM THE DISTRICT COURT OF BURNET COUNTY, 33RD JUDICIAL DISTRICT**
**NO. 9164, HONORABLE GUILFORD L. JONES III, JUDGE PRESIDING**

---

Charged with sexual assault of a child, appellee Eric Jerome Lacy moved to suppress a statement he made to a Texas Department of Public Safety (ADPS@) employee at the conclusion of a polygraph examination. After a hearing, the district court granted his motion. The State appeals. *See* Tex. Code Crim. Proc. Ann. art. 44.01(a)(5) (West Supp. 2002). We will affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Lacy was indicted on February 27, 2001, for the aggravated sexual assault of AMS-01,@ the six-year-old female child of his ex-girlfriend. After his arrest, the district court appointed an attorney for him. Because of a parole violation, Lacy remains incarcerated in the Burnet County jail without bond.

The State offered Lacy an opportunity to take a polygraph examination. Against the advice of his court-appointed attorney, Lacy agreed to the examination. Melloney Myers, an employee of the DPS, Criminal Law Enforcement Special Crimes Service, administered the polygraph examination, which took place at the Marble Falls Police Department. A law enforcement officer transferred Lacy from Burnet to Marble Falls and later returned him to Burnet. Lacy wore handcuffs during the transfer.

Lacy=s attorney met with Myers at the Marble Falls Police Department before the examination. Myers informed the attorney that the results of the examination would not be admissible in court and that Lacy would need to sign two forms prior to the examination. The first, a waiver-of-rights form, detailed Lacy=s *Miranda* rights.[1] The second, entitled APolygraph Examination Consent and Written Authorization to Inspect Polygraph Records,@stated that the examination was voluntary and could be stopped at any time. The attorney recommended to Lacy that he should not take the polygraph examination. He explained that the examination results would not be admissible

---

[1] A*Miranda* rights@ refer to warnings that must be read to suspects in custody. Officers must warn an accused that (1) he has the right to remain silent and not make any statement at all; (2) any statement he makes may be used as evidence against him in court; (3) he has the right to have a lawyer present to advise him prior to and during questioning; (4) if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and (5) he has the right to terminate the interview at any time. *Miranda v. Arizona*, 384 U.S. 436, 467-74 (1966); s*ee also* Tex. Code Crim. Proc. Ann. art. 15.16(a) (West Supp. 2002), art. 38.22, ' 2 (West 1979).

in court; however, he noted that they could be very harmful to Lacy because prosecutors would see the result. Lacy insisted on the examination. However, he signed a waiver stating that he had been advised not to proceed, but that he voluntarily wished to take the examination.

Myers then conducted the examination. Although Myers had been employed by DPS and obtained the rank of sergeant, her present position does not have a Arank@ associated with it. Consistent with her position at the time of the examination, she did not conduct the examination while wearing a DPS uniform. Lacy=s handcuffs were removed for the examination, and although he was permitted to voluntarily leave the examination room, he could not leave the police station. Myers testified that Lacy was not in her custody during the examination because he was permitted to leave her presence. The examination showed that there was significant criteria normally associated with deception pertaining to knowledge of and participation in the offense. During a post-examination interview, as required by law,[2] Myers advised Lacy of her conclusions and afforded him an opportunity to explain why his answers reflected a Adeception indicated@ result.[3] Lacy then made a statement to Myers admitting sexual contact with the child.[4]

---

[2] 22 Tex. Admin. Code ' 395.10 (a) (2002) (Examining Boards) (AA polygraph examiner shall advise the examinee of the results of the examination prior to the termination of the polygraph examination. The results will be conveyed to the examinee as: (1) deception indicated; (2) no deception indicated; (3) inconclusive; or (4) no opinion@).

[3] *Id.* ' 393.7(a)-(b) (defining polygraph examination as comprising all or any part of (1) pre-test, (2) testing phase, (3) chart analysis phase, (4) post-test phase); 22 Tex. Admin. Code ' 395.10 (b) (2002) (Examining Boards) (giving examinee opportunity to explain relevant question results).

[4] Lacy responded Ano@ when asked, during the polygraph examination, Adid your penis touch >MS-01=s vagina,@ Adid your penis touch >MS-01=s vagina like she alleged@ and Adid you have any sexual contact with >MS-01.=@ He explained the Adeception indicated@ result by admitting to inserting his finger, on two occasions, into the child=s vagina until she bled.

The district court granted Lacy=s motion to suppress the statement. The State now appeals the district-court order.

**DISCUSSION**

The State contends that the statement made to Myers was not a product of a custodial interrogation. As a result, the State argues that the district court erred in granting the motion to suppress Lacy=s statement. In granting Lacy=s motion to suppress, the district court found that Lacy was Ain custody@ when Myers asked him to explain the indication of deception.

An oral confession of guilt or an oral admission against interest made by one in custody is inadmissible evidence as the statement is likely to be misunderstood, easily fabricated, and hard to contradict. *See Shiflet v. State,* 732 S.W.2d 622, 623 (Tex. Crim. App. 1985) (citing *Gay v. State,* 2 Tex. Ct. App. 127 (1877); *Riley v. State,* 4 Tex. Ct. App. 538 (1878)). An accused=s oral statement during a custodial interrogation is inadmissible in a criminal proceeding against him unless an electronic recording of the statement is made after the accused has been given and waived the *Miranda* warnings. Tex. Code Crim. Proc. Ann. art. 38.22 ' 3 (West Supp. 2002); *see also Butler v. State*, 493 S.W.2d 190, 191 (Tex. Crim. App. 1973) (Aprohibition against the use of oral confessions is a mater of a state statute@). Here, it is undisputed that Lacy=s statement to Myers was not recorded. Therefore, if Lacy was in custody when he made his statement, the district court was correct in suppressing it.

*Standard of Review*

4

The district court concluded that Lacy was in custody. We review *de novo* Amixed questions of law and fact@ that do not turn on credibility and demeanor. *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997) (citing *Villarreal v. State*, 935 S.W.2d 134, 139-41 (Tex. Crim. App. 1996) (McCormick, P.J. concurring)). We will review *de novo* the district court=s legal determination that Lacy was in custody at the time of his post-polygraph statement.

*Custodial Interrogation*

A custodial interrogation is the questioning by law-enforcement officers after taking a person into custody or otherwise depriving him of his freedom in a significant way. *Cannon v. State*, 691 S.W.2d 664, 671 (Tex. Crim. App. 1985) (citing *Miranda v. Arizona*, 384 U.S. 436 (1966)). In determining whether an individual was in custody, courts examine all the circumstances surrounding the interrogation to answer the ultimate inquiry: whether there was a formal arrest or restraint of movement to the degree associated with a formal arrest. *See California v. Beheler*, 463 U.S. 1121, 1125 (1983) (citing *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977)); *Meek v. State*, 790 S.W.2d 618, 621 n.2 (Tex. Crim. App. 1990). In Texas, the standard used to answer this inquiry is clear: Aa person is >in custody= only if, under the circumstances, a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest.@ *Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996) (citing *Stansbury v. California*, 511 U.S. 318, 322-24 (1994)). Here, Lacy was under formal arrest resulting from parole violations. Indeed, he was incarcerated. Although allowed to end the examination and leave the examination room, his freedom was restrained consistent with formal detention. We hold that his statement was obtained while in custody.

**5**

The State argues that but for the fact that Lacy was incarcerated due to previous parole violations, the fact that he voluntarily accompanied law-enforcement officers to a police station for a polygraph examination administered by a DPS employee would not have amounted to custody. *See Shiflet*, 732 S.W.2d 622; *Rodriguez v. State*, 939 S.W.2d 211 (Tex. App.CAustin 1997, no pet.) (op. on reh=g). Both *Rodriguez* and *Shiflet*, applying the reasonable-person standard, found that when a person voluntarily accompanies officers to a location and he knows or should know that he is a suspect in the crime the officers are investigating, the person is not in custody. *Shiflet*, 732 S.W.2d at 628. However in *Shiflet,* the court said that custody can occur if a person is led to believe, as a reasonable person, that he is deprived of his freedom of movement. *Id.* Lacy, however, had been formally arrested and incarcerated. Under such circumstances, no reasonable person could believe he was not in custody. That Lacy voluntarily submitted to the polygraph examination has no bearing on the restrictions that the State had placed on his general freedom.

## CONCLUSION

Because Lacy=s statement was not recorded in compliance with the code of criminal procedure, we hold that the district court did not err in granting the motion to suppress the statement and affirm the district court=s order.

Lee Yeakel, Justice

**6**

Before Chief Justice Aboussie, Justices B. A. Smith and Yeakel

Affirmed

Filed: June 13, 2002

Publish