Joseph John CANNON, Appellant,

v.

The STATE of Texas, Appellee.

No. 69022.

Court of Criminal Appeals of Texas, En Banc.

May 8, 1985.

Rehearing Denied June 26, 1985.

David K. Chapman, court appointed, Fred Rodriguez, court appointed, San Antonio, for appellant.

Sam D. Millsap, Jr., Dist. Atty. and Hipolito Canales, Jr., Edward J. Coffey and Charles Estee, Asst. Dist. Attys., San Antonio, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

The appellant was convicted of capital murder. In response to the affirmative answers of the jury to the special issues submitted under Article 37.071, V.A.C.C.P., the court assessed the death penalty.

On appeal appellant advances twelve grounds of error. He complains that the trial court erred in failing to suppress his extrajudicial confession and erred in failing to withdraw the confession from the jury's consideration at the conclusion of the guilt stage of the trial. He also challenged the sufficiency of the evidence to sustain the conviction and the affirmative findings to special issues one and two at the penalty stage of the trial. Appellant further contends that a mistrial should have been granted when there was improper jury argument, that the court erred in refusing several special requested jury charges, and in refusing to reconsider the voluntariness of the confession. He further urges that the court erred in refusing to allow him to perfect a "bill of exception" at the hearing on the motion for new trial by introducing the statement of facts from the hearing on the motion for new trial following his first trial.

A brief recitation of the facts is necessary to put the grounds of error in proper perspective.

Shortly before noon on September 30, 1977, the body of Anne Walsh was found by San Antonio Police Officer Shelton Spears, lying in a pool of blood on the floor of her Bexar County home. She had suffered seven gunshot wounds. Three wounds were to the chest, one was to the center of the abdomen, and one to her head. The others were to her arms. The wounds and the paths of the bullets were consistent with someone standing over her and firing.

There was a large trail of smeared blood which indicated that the body had been dragged out from under a pool table where the deceased had crawled in an attempt to escape the shots. The blouse of her dress had been ripped open, her skirt had been pulled up to her waist and her panty hose had been ripped and pulled down to her knees.

Officer Spears found the body when he brought the appellant to the Walsh home. Appellant had been involved in an automobile wreck and had been arrested. Spears found the Ford Maverick vehicle registered to a member of the Walsh family, and suspecting it was stolen, took the appellant to the Walsh home to check out his story that he was in rightful possession of the vehicle.

Appellant was 17 years old and illiterate, though he could write his name. He was a former resident of Houston and had hitchhiked to San Antonio, intending to go to Las Vegas, Nevada. He was arrested in San Antonio on a burglary charge. Appellant was represented on the burglary charge by court-appointed counsel, Dan Carabin, a San Antonio attorney. Carabin was successful in having the court grant appellant probation approximately one week before the alleged murder. Appellant was homeless and had no friends or relatives in San Antonio. Carabin and his sister, Anne Walsh, also an attorney, took an interest in appellant's welfare. He was permitted to live at the Walsh home while

he was on probation. The deceased had several teenage children living at home. They attempted to befriend appellant by helping him find a job and inviting him to go along on social events.

Dan Carabin testified that about 9:30 a.m. on September 30, 1977 he received a telephone call from the appellant inquiring how he was to pay him or his sister if he stayed around the house. The inquiry didn't make much sense to Carabin as there was no agreement for him or his sister to be paid. Carabin had clients in his office and told the appellant that he would call him back. When he returned the call about 10:30 a.m., no one answered the phone at his sister's house.

Stephani Walsh, the deceased's daughter, went to her mother's office about 10:30 a.m. on the date in question to exchange automobiles. She and her mother agreed to meet at home for lunch. Stephani took her mother's stationwagon and left her 1974 white Ford Maverick for her mother to drive.

Reserve Deputy Constable Robert Wenzel drove by the Walsh residence on September 30, 1977, and saw appellant in the white Ford Maverick. Wenzel knew that the vehicle belonged to a Walsh family member and that appellant was not a family member. Wenzel drove on but watched the Maverick through his rear window of his automobile. The Maverick suddenly lunged onto the road and proceeded in an erratic manner in the same direction as Wenzel was driving. The Maverick sped past Wenzel and Wenzel gave chase. The Maverick swerved from one side of the road to the other. The chase ended when the Maverick crashed into a chainlink fence beside "Al's Corner," a restaurant/bar.

Kenneth Kizer, a bartender, saw the appellant exit the Maverick after the crash and run across the road into a brush-covered field as he discarded his shirt. Kizer called the San Antonio Police. Twenty minutes later appellant returned and entered the bar and bought a Coke. Appellant remained in the bar with Kizer and Wenzel until the police arrived.

Officer Spears took the appellant into custody, gave him the *Miranda* warnings, and then took him to the nearby Walsh home to check out his story about lawful possession of the Maverick. The body of Anne Walsh was then discovered. Other officers were called.

Later Spears transported appellant to the homicide division of the San Antonio Police Department. Later in the day after interrogation by Detective Castillon, the appellant gave the officer a written statement which reads in part in its original form:

"I would like to say that I have been staying at 6048 Babcock for about a week now. I'am staying there because I'am on probation for burglary and my attorney arranged for me to stay with his sister Anne C. Walsh. My attorney;s name is Dan Carabin.

"Today about noon Anne returned home in a white car that I have never seen before. She drove into the drive way and went in the house. I was outside triming the bushes out front because she had asked me to do it the day before. I guess I just went crazy because I went inside and got a gun off the bunk bed in the oldest boy's bedroom. The next thing I knew was that Anne was on the floor of the den crying and saying "please don't shoot again" and I don't know why but I kept shooting. While I was shooting her she crawled under the pool table. I then pulled her out from under the pool table and ripped her cloths off. I then pulled my jeans down and got on top of her. I think she was dead at this time because she was bleeding alot and she was not moving or breathing. I then got on top of Anne and tried to have sex with her. By this I mean I tried to screw her but I got peranoid and just could not do it. I then got up and pulled up my jeans and went to the kitchen where I found Anne's purse on the counter. I took three or four dollars and two fifty dollar travelers checks and ran out the side door. I got into the white car Anne was driving and drove off real fast. As I was going out

the gate I almost hit a car on abcock Road. At this time a man in a green car started chasing me. He chased me down the street until I ran into fense near the bar at the corner. I got out of the car and jumped a fense and ran into a field were I took my shirt off and threw it. I also burried the traverliers checks under some brush in the field. After that I walked out of the field and back to the car. I don't know why I did this I guess I wanted to get caught. I would like to say that before Anne came home I wentinto the oldest son's bedroom and saw all of these shotguns, rifles and guns on the bunk bed and just went crazy and started throwing them around. I think one of the went through the window. While I was in the bedroom I found a gun in a holster with bullets already in thegun. I left the holster on the bed and put the gun my pants. From there I went out into the yard and cut the bushes. I also would like to say that I found the gun in theholster while I was looking for coins under the matress of the lower bunk. The coins I took are the same coins I had on me when you took them off me.

"I would like to say that before I told you I went into the bedroom and got the gun after Anne got home But the truth is I had already got the gun before Anne came home. I would like to tell you that I did this because I go crazy sometime and just a couple of nights ago I woke up in early hours in themorning I was very sick and something inside kept telling me to kill everyone in thehouse while they slept. Again I went to tell you that I don't know why I did this but I have been sick for a long time and I was hit by a car when I was four years old and from then on I have been in nothing but trouble. I had no gruge or any reason to kill Anne in fact she went out of her way to be nice to me. I do not know to read and Det. Castillon told me that julia smith would read this to me and I have read this and find it to be true and cor-

rect to thebest of my knowledge." (All spelling and punctuation as it appears in original.)

Several firearms, including the .22 caliber revolver shown to be the murder weapon, were taken from the deceased's home and were shown to have been found in the Maverick the appellant was driving. A tennis racket and prescription drugs taken from the home were also found in the car. Mexican coins and moon and garnet stones taken from the home were found in appellant's pockets. A spot of human blood was found on appellant's blue jeans.

In his first ground of error, appellant contends that the trial court erred by refusing to suppress his extrajudicial confession. He argues that his confession was taken despite his invocation of the right to counsel at the time of apprehension by Deputy Constable Wenzel, despite his repeated invocation of his right to silence later at the scene of the alleged offense and despite his invocation of the right to counsel at the Homicide Office of the San Antonio Police Department.

In analyzing these contentions, we deal exclusively with the testimony given at the suppression hearing.

The trial court conducted a Jackson v. Denno[1] and Article 38.22, V.A.C.C.P., hearing on the voluntariness and admissibility of the confession pursuant to appellant's pre-trial motion to suppress said confession.

With regard to his first contention that he invoked the right to counsel at the time of apprehension, appellant relies heavily upon *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), and *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

In *Edwards,* the United States Supreme Court wrote:

"Second, although we have held that after initially being advised of his *Miranda* rights, the accused may himself validly waive his rights and respond to interrogation, see *North Carolina v.*

**1.** *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

*Butler,* supra, 441 U.S. [369], at 372–376, 99 S.Ct. [1755] at 1757–1759 [60 L.Ed.2d 286 (1979)], the Court has strongly indicated that additional safeguards are necessary when the accused asks for counsel; and *we now hold that when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights.* We further hold that an accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." (Emphasis supplied.)

We must now determine if *Edwards* is applicable to the particular circumstances surrounding appellant's first contention regarding his invocation of the right to counsel.

It appears that appellant's erratic driving of the Ford Maverick automobile attracted the attention of Deputy Constable Wenzel, who followed. Appellant crashed the Maverick into a chainlink fence beside "Al's Corner," a restaurant/bar at the intersection of Babcock and Huebner Roads. He then fled across the road into a brush-covered field. Kenneth Kizer, the bartender at "Al's Corner," called the San Antonio City Police Department. Approximately twenty minutes later appellant voluntarily returned and entered "Al's Corner" and ordered a Coke from Kizer. There was some conflict whether Wenzel was present at the time or entered shortly thereafter. Under any circumstances, Kizer testified that Wenzel indicated to him that the appellant had been the driver of the wrecked vehicle. Kizer then asked appellant if he had been the driver. Appellant denied he was driving and stated he was hitchhiking. When Kizer stated appellant (sans a shirt) didn't look like he was hitchhiking, appellant handed Kizer a card from his pocket and asked if he knew the individuals whose names were on the card. Kizer did not remember the names, but remembered they were attorneys. Appellant asked him to call one of the attorneys for him, but Kizer told appellant to make the call himself. Kizer stated that during the conversation Wenzel did not approach or question the appellant.

Wenzel testified he was in the bar when appellant entered but that he did not approach or speak to the appellant until appellant attempted to leave the bar, and then he told appellant to wait until the police arrived. He was fearful that appellant would flee again and he was acting in his capacity as a peace officer [2] in holding the appellant until the police arrived, which they did in a matter of minutes. Wenzel testified appellant did not ask him for an attorney and he did not hear the conversation between the appellant and Kizer. When the police arrived, Wenzel escorted the appellant outside and surrendered him to the custody of Officer Spears.

Appellant testified that he entered the bar and ordered a Coke. While appellant was drinking the Coke, Wenzel entered the bar and began questioning him about the wrecked car and accusing him of being the driver. It was at this time that appellant handed the business card of Dan Carabin, brother of the deceased, and San Antonio attorney, to Kizer and asked him to call his (appellant's) attorney. When Kizer refused and told him to make the call himself he put the card back in his pocket and did not call because there was no nearby telephone, and Wenzel would not let him move. When he heard the police vehicles approaching, he started to leave the bar to meet them, but Wenzel restrained him until the police had actually arrived.

**2.** Wenzel, a reserve deputy constable, stated that he had not been called to duty, but later stated that he was acting as a peace officer.

Appellant makes much to do about the fact that Wenzel gave a statement to the San Antonio police later on the day of the arrest in which he stated that "Red, the bartender" had told him that the appellant had requested the bartender to call an attorney and that when the bartender refused the appellant returned the card to his wallet. The statement makes clear that Wenzel's conversation with the bartender was after appellant's arrest by the San Antonio police and before he (Wenzel) left "Al's Corner."

The evidence also shows that Wenzel and Kizer were unaware that a homicide had taken place.

*Edwards* makes clear that it deals with the invocation by an accused of his right to have counsel present during custodial interrogation.

■ "Custodial interrogation" is questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *Mathis v. United States*, 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968); *Orozco v. Texas*, 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311 (1969). The *Miranda* requirements as to warnings are not limited to police station house interrogations, but may be applicable to custodial interrogation elsewhere when the accused is under arrest and not free to leave at the time of questioning. *Orozco v. Texas*, supra; *Creeks v. State*, 542 S.W.2d 849 (Tex.Cr.App.1976). The fact, however, that the accused and peace officers are together in an office, home, police car, bar, etc., will not render a statement inadmissible in absence of the *Miranda* warnings if the circumstances do not fall within the definition of custodial interrogation. *Bell v. State*, 442 S.W.2d 716 (Tex.Cr.App.1969); Tex.Juris. 3rd Ed., Criminal Law, Vol. 21, § 1454, p. 55.

■ It must also be remembered that general on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by the *Miranda* holding. *Miranda v. Arizona*, supra. *Hoover v. State*, 449 S.W.2d 60 (Tex.Cr.App.1969); *Sirabella v. State*, 492 S.W.2d 571 (Tex.Cr.App.1973); *Allen v. State*, 536 S.W.2d 364 (Tex.Cr.App.1976).

■ In the instant case appellant voluntarily returned to the scene of the car wreck and entered the bar. While engaged in a conversation with the bartender (not a law enforcement official) about the wreck he asked the bartender to call a person whose name was on a card, apparently attorney Carabin. The bartender refused. There is nothing to show that appellant was in custody at the time or that there was ever any custodial interrogation at the time by Deputy Constable Wenzel. The claimed invocation of the right to counsel was not made during any custodial interrogation. In fact, neither the officer nor the bartender were aware of any homicide at the time.

Appellant contends that, having invoked his right to counsel by a request to the bartender to call his attorney under the circumstances described, the police were precluded from later interrogating him without him first initiating the conversation.

In his brief appellant states:

"The only issue, at least as far as Al's Corner is concerned, is whether a criminal suspect may invoke his right to counsel under *Miranda* as appellant did in this case. That is, may he, while in the presence, hearing, and custody of a peace officer, ask a third person to get him an attorney—and does this have the same *Miranda* effect as addressing the request to the officer?"

Appellant candidly admits he has found no Texas case squarely in point. Appellant does cite *People v. Buxton*, 44 N.Y.2d 33, 403 N.Y.S.2d 487, 374 N.E.2d 384 (1978), but we conclude *Buxton* may be distinguished on the facts.

Here the request was made to a third party before the appellant was in custody.

There was evidence the Reserve Deputy Constable was several feet away, but he related that he did not hear the conversation, was unaware of any homicide, and did not learn of the card incident until after appellant had been arrested by the San Antonio police and before he left Al's Corner when he again talked to the bartender. Appellant appears to argue that since the deputy constable was present the knowledge of the request for the bartender to call a lawyer was imputed to the San Antonio Police. We do not agree that *Edwards* is here controlling under the particular facts involved.[3]

■ Appellant also argues the court should have suppressed the confession because of his repeated invocation of his right to silence at 6084 Babcock Road, the scene of the alleged offense. Appellant contends that the State has not met its heavy burden of showing his right to remain silent was scrupulously honored. *Miranda v. Arizona,* supra; *Michigan v. Mosley,* 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975); *Faulder v. State,* 611 S.W.2d 630 (Tex.Cr. App.1979); *Hearne v. State,* 534 S.W.2d 703 (Tex.Cr.App.1976).

Shelton Spears, a San Antonio police officer, responded on September 30, 1977 to a call concerning a traffic accident near "Al's Corner." He arrived about noon and appellant was identified to him as the driver of the Ford Maverick vehicle. When he discovered appellant was not the registered owner, and suspecting the car might be stolen, he arrested appellant and read to him his *Miranda* warnings. Appellant told him that he was living at the Walsh home,

and had lawful possession of the vehicle. Since the Walsh home was nearby, Spears took appellant there to ascertain the validity of appellant's story. After looking through an open window, Spears saw the body of the deceased. He then handcuffed the appellant and contacted other officers and Emergency Medical Services.

Appellant testified that he was not given the *Miranda* warnings until the time Spears discovered the body. He related that he did understand his right to silence and his right to counsel.[4] Officer Donald Sirianni had temporary custody of appellant at the scene. Sirianni testified that appellant failed to respond to questions of some officers at the scene regarding the homicide and that appellant refused to discuss the homicide with Dan Carabin, when Carabin arrived at the scene and approached him. Officer Frank Castillon arrived at the scene, inquired of appellant and learned he had been given his *Miranda* warnings. Castillon asked appellant about his possession of the car, and appellant responded there had been burglars at the Walsh home and that he had given chase.

At the suppression hearing appellant could not remember any of the questions asked him at the scene and denied he said a word. Later he admitted he talked to Castillon and told the story about the burglars which he admitted was untrue.

Appellant does not contend that he verbally invoked his right to silence at the scene but points to his actions and conduct as being sufficient to invoke that right.

The trial court in its findings following the *Jackson v. Denno* hearing found that

---

3. In *Solem v. Stumes,* 465 U.S. 638, 104 S.Ct. 1338, 79 L.Ed.2d 579, 34 Cr.L.R. 3089 (1984), the United States Supreme Court held that *Edwards* was not to be applied in collateral review of final convictions. In *Shea v. Louisiana,* — U.S. ——, 105 S.Ct. 1065, 84 L.Ed.2d 38, 36 Cr.L.R. 3153 (1985), the Court held that *Edwards* applies to cases pending on direct appeal at the time *Edwards* was decided (May 18, 1981). In the instant case appellant's conviction stems from his second trial which commenced in February, 1982. At first blush it would seem that *Edwards* would be applicable. In view of our disposition of the ground of error that *Edwards,* if applicable, is not controlling in view of the

factual circumstances, we need not decide whether *Edwards* was applicable to appellant's second trial where his first trial commenced (January, 1979) prior to the effective date of *Edwards.* See *Jenkins v. Delaware,* 395 U.S. 213, 89 S.Ct. 1677, 23 L.Ed.2d 253 (1969), holding that the *Miranda* standards do not apply to any retrial of a defendant whose first trial commenced prior to June 13, 1966, the date of the *Miranda* decision.

4. Appellant stated he learned these rights while he was in jail.

the appellant never informed any police officer that he did not want to discuss the death of Anne Walsh, and did not remain silent at the homicide scene,[5] but fabricated a story about a burglar which he later repudiated. The evidence supports the court's findings. Appellant's contention that he invoked his right to silence at the homicide scene is without merit.

Appellant also argues that he invoked his right to counsel at the police station when he was being interrogated by Castillon and prior to giving the confession.

Officer Castillon testified that at the Homicide Office he read appellant his *Miranda* rights for a second time and interrogated him about the offense. The appellant stated that he understood his rights and wanted to talk about the offense. Castillon stated that appellant never asked for an attorney and that he would have ceased the interrogation if appellant had. Castillon related that appellant at first repeated the story about the burglars, and when he expressed doubt about the story and why appellant was at the Walsh home, appellant told him (Castillon) to call or talk to Dan Carabin if he didn't believe he (appellant) was staying at the Walsh home, to check out the story with Carabin. Castillon stated appellant never requested that Carabin come to the police station as his attorney.

Appellant testified he asked Castillon for a lawyer, for "my lawyer" or for Dan Carabin ten or eleven times, that all his requests were for Carabin. He related that Castillon told him that he had just killed Carabin's sister and he (Carabin) didn't represent him anymore. He denied that he asked for Carabin only to have him verify his story. He testified he finally gave up requesting counsel and made the confession. Appellant acknowledged he saw Carabin at the homicide scene and that Carabin asked him what had happened. He stated an officer took Carabin away before he could answer. At first he denied that he heard Carabin tell the officer at the scene that he didn't represent the appellant anymore, but later stated he was seated in the patrol car when he heard that conversation.

At the suppression hearing, the trial court was confronted with two versions of what transpired at the Homicide Office. Thus there was a factual dispute to resolve. The court found that appellant only wanted Castillon to contact Carabin in order to verify appellant's story that he was a resident of the Walsh home and was entitled to be there.

It is well established that at a *Jackson v. Denno* hearing the trial judge is the trier of the facts, the judge of the credibility of the witnesses and of the weight to be given to the evidence. *Dykes v. State,* 657 S.W.2d 796 (Tex.Cr.App.1983); *Rumbaugh v. State,* 629 S.W.2d 747 (Tex. Cr.App.1982); *Moon v. State,* 607 S.W.2d 569 (Tex.Cr.App.1980); *English v. State,* 592 S.W.2d 949, 952 (Tex.Cr.App.1980); cert. den. 449 U.S. 891, 101 S.Ct. 254, 66 L.Ed.2d 120 (1980). The court may believe or disbelieve all or any part of a witness' testimony. *Hughes v. State,* 562 S.W.2d 857 (Tex.Cr.App.1978). There is evidence to support the findings of the trial court, and we find no error in its refusal to suppress the appellant's confession.

Next appellant complains that the trial court erred in refusing his request to have the confession withdrawn from the jury's consideration at the close of the guilt stage of the trial. He argues: (1) the face of the confession did not reflect that he knowingly and intentionally waived his rights set out in Article 38.22, § 2(a); (2) that the State failed to prove before the jury that he had signed the confession; and (3) that the court should have re-opened the *Jackson v. Denno* hearing.

While objecting to the court's charge, the appellant objected to the fact that the necessary waiver was not reflected on the face of the confession and still later he objected

---

**5.** The trial court also found that appellant refused to talk to *some* of the police officers at the scene.

the State failed to prove to the jury that the appellant signed the confession as required by Article 38.22(1), V.A.C.C.P. Both objections were overruled. We do not find a request for the court to re-open the *Jackson v. Denno* hearing.

Article 38.22, § 2, provides in part:

"Sec. 2. No written statement made by an accused as a result of custodial interrogation is admissible as evidence against him in any criminal proceeding unless it is *shown on the face of the statement that*

"(a) the accused, prior to making the statement, either received from a magistrate the warning provided in Article 15.-17 of this code or received from the person to whom the statement is made a warning that

"(1) * * *

"(2) * * *

" * * * *

"(b) the accused, prior to and during the making of the statement, knowingly, intelligently, and voluntarily waived the rights set out in the warning prescribed by Subsection (a) of this section."

The confession introduced into evidence before the jury and reflecting the signature of the appellant shows on its face the warnings required by Article 38.22, § 2(a). This is immediately followed by:

"The above rights are continuing rights which can be urged by me at any stage of the proceedings, and I do hereby voluntarily waive these rights and give to the said Frank Castillon, Jr., the person to whom this statement is being made, the following statement; ...."

A reading of the confession which is labeled "Voluntary Statement of Joseph John Cannon...." reflects a compliance with Article 38.22, § 2(b), although it is not a model form for a confession.

■ At the *Jackson v. Denno* hearing the appellant, Castillon and a witness to the confession all testified that appellant signed the confession. The State confesses that there was no direct statement before the jury that appellant had signed the con-

fession but that there was ample testimony concerning the giving of the confession by the appellant and the circumstances surrounding the same. There was no objection to the confession when it was offered before the jury on this basis. The statement contained a signature purporting to be that of the appellant. Since no objection was made at the time the confession was offered into evidence, it was waived. *Amaya v. State,* 473 S.W.2d 476, 478 (Tex. Cr.App.1971); *Nelson v. State,* 626 S.W.2d 535 (Tex.Cr.App.1981). See also *Hobson v. State,* 627 S.W.2d 532 (Tex.App.—Corpus Christi 1982), affirmed 644 S.W.2d 473 (Tex.Cr.App.1983).

We find no request to re-open the *Jackson v. Denno* hearing, and we do not conclude that under the circumstances the trial court was obligated to do so sua sponte. Appellant's contentions are overruled.

Appellant also urges that the evidence is insufficient to support the jury's verdict. He particularly contends that the evidence is insufficient to rebut the exculpatory language in the confession and insufficient to establish that the murder was committed in the course of a robbery as alleged in the indictment.

Appellant relies upon *Palafox v. State,* 608 S.W.2d 177 (Tex.Cr.App.1979). There, in accordance with established authority, this Court held that when the State introduces a defendant's confession it is bound by any exculpatory portions of the confession unless it otherwise disproves the exculpatory facts beyond a reasonable doubt. Before the rule of *Palafox* may be utilized, however, "it must first be established that the accused has admitted doing the acts which constitute the gravamen of the offense." Id. at p. 181.

■ Appellant contends that the confession introduced by the State contains an admission of the acts constituting the offense, but also includes language which is exculpatory on the issue of intent. He calls attention to that part of the confession which reads:

"I went inside and got a gun off the bunk bed in the oldest boy's bedroom. The next thing I knew was that Anne was on the floor of the den crying and saying "please don't shoot again" and I don't know why but I kept shooting.

" * * *

"I was hit by a car when I was four years old and from then on I have been in nothing but trouble. I had no gruge [sic] or any reason to kill Anne in fact she went out of her way to be nice to me."

■ The State asserts that these statements, even if taken to be true, are not exculpatory as to the appellant's intent to kill. In *Casias v. State,* 452 S.W.2d 483 (Tex.Cr.App.1970), we found the statement —"I don't know what made me hit her, but I did hit her"—when read in the context in which it appeared in the confession was not exculpatory. *Casias* is here instructive. We agree with the State that the statements referred to are not exculpatory when read in the light in which they appear in the confession. See *Richards v. State,* 511 S.W.2d 5 (Tex.Cr.App.1974); *Maxwell v. State,* 628 S.W.2d 773 (Tex.Cr.App.1982); *Daniel v. State,* 668 S.W.2d 390 (Tex.Cr. App.1984). Further, there is sufficient evidence to establish a specific intent to kill in and outside the confession. The use of a deadly weapon per se, the manner in which the weapon had to be fired, the location of the many wounds and appellant's disregard of the deceased's pleas and efforts to escape are sufficient to establish that the appellant acted with the requisite intent to kill. See *Thompson v. State,* 621 S.W.2d 624 (Tex.Cr.App.1981).

■ Appellant also argues that the evidence is insufficient to show that the murder was committed in the course of a robbery. He argues that the taking of property was disconnected with the assault upon the deceased which was sexual in nature, and which was not alleged in the indictment. The confession shows that prior to killing the deceased, appellant ransacked the bedroom of one of the children in search of money and took a loaded .22

caliber pistol from the room. When the deceased arrived at her home, he used the pistol to kill her and then took money from her purse. Several firearms, a bottle of prescription drugs, and various other items were taken from the house by appellant. He then took the automobile belonging to the deceased's daughter and fled. The evidence was sufficient to prove that the alleged murder was committed in the course of a robbery. See *Stogsdill v. State,* 552 S.W.2d 481 (Tex.Cr.App.1977); *Autry v. State,* 626 S.W.2d 758 (Tex.Cr.App.1982); *Banks v. State,* 643 S.W.2d 129 (Tex.Cr. App.1983). And this is particularly true when the evidence is viewed in the light most favorable to the verdict under the test of *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). See *Carlsen v. State,* 654 S.W.2d 444, 448 (Tex. Cr.App.1983) (Opinion on State's Motion for Rehearing).

Appellant argues that the trial court erred in not giving his special requested charge on exculpatory statements. He contends the jury should have been instructed to acquit unless the exculpatory statements in the confession had been disproven or shown to be false by other evidence in the case, citing *Cole v. State,* 170 Tex.Cr.R. 264, 340 S.W.2d 45 (1960), and *Palafox,* supra.

■ We have already concluded that the statements were not exculpatory, thus the trial court did not err in overruling the requested instruction. Further, if the State does not rely alone upon the confessions to connect the accused to the offense charged, but introduces evidence in rebuttal of the same, it is not error to refuse to instruct the jury with reference to exculpatory statements. *Fernandez v. State,* 172 Tex.Cr.R. 68, 353 S.W.2d 434 (1962); *Richards v. State,* 511 S.W.2d 5 (Tex.Cr.App. 1974). Appellant's contention is overruled.

Appellant advances a ground of error that the trial court erred at the guilt stage of the trial in denying his "fifth requested charge." Appellant requested an "affirmative" charge that the jury acquit him of capital murder if it found that he had com-

mitted the murder in the course of a felony other than robbery as alleged in the indictment. Appellant contends that the confession raises the question whether the murder was committed in the course of a rape rather than a robbery, and that the murder and robbery were disconnected from one another.

We have examined the requested charge and the court's charge as given to the jury and find no error. The court's charge, inter alia, affirmatively instructed the jury to find the appellant not guilty of capital murder if it did not believe or if it had a reasonable doubt that the killing did occur during the course of a robbery. The charge adequately protected appellant's rights. The denial of a defendant's requested instruction is not error where the requested instruction is an affirmative submission of a defensive issue which merely denies the existence of an essential element of the State's case. *Green v. State*, 566 S.W.2d 578 (Tex.Cr.App.1978); *Moon v. State*, 607 S.W.2d 569 (Tex.Cr.App.1980); *Thomas v. State*, 678 S.W.2d 82 (Tex.Cr. App.1984). The ground of error is overruled.

Appellant urges that the trial court erred in denying his motion for mistrial when the prosecutor, at the guilt stage of the trial, argued the jurors should compare the credibility of Officer Castillon to that of the appellant.

Although he testified at the *Jackson v. Denno* or Article 38.22, V.A.C.C.P., hearing, appellant did not testify at the trial on the merits.

During jury argument the prosecutor argued:

"And he [Officer Castillon] told you that Cannon was telling him some story, and, 'if you don't believe me, check it with Dan Carabin. Call Dan Carabin.' He wasn't asking for Dan Carabin as a lawyer. Castillon told you, 'if you had asked for a lawyer, and I don't want to talk to you,' he would have let him—he would have stopped. I think that if it comes between *Carabin* and *Cannon's credibility* . . . ." *(Emphasis supplied.)*

Before the prosecutor could finish his sentence, the record reflects:

"MR. RODRIQUEZ (Appellant's Counsel): We'll object to that. That is an indirect reference to the defendant's failure to testify. His credibility is not in issue in this trial.

"THE COURT: Yes, sir.

"MR. RODRIQUEZ: We'll ask the court to instruct the jury to disregard it.

"THE COURT: It is true, the credibility of Mr. Cannon is not in issue in this trial."

The court then overruled appellant's motion for a mistrial.

In *Bird v. State*, 527 S.W.2d 891, 892 (Tex.Cr.App.1975), this Court wrote:

"It is well settled in this State that for the argument or comment to offend against the statute (Article 38.08, supra) the language used must be looked to from the standpoint of the jury, and the implication that the language used had reference to the accused's failure to testify must be a necessary one. *It is not sufficient that the language might be construed as an implied or indirect allusion thereto. Ramos v. State*, 419 S.W.2d 359, 367 (Tex.Cr.App.1967), and cases there cited; *Overstreet v. State* [470 S.W.2d 653 (Tex.Cr.App.1971) ], supra; *Koller v. State*, 518 S.W.2d 373 (Tex.Cr.App.1975); *McDaniel v. State* [524 S.W.2d 68 (Tex.Cr.App.1975) ], supra; *Hicks v. State* [525 S.W.2d 177 (Tex. Cr.App.1975) ], supra.

"The test employed is whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the accused's failure to testify. See *McDaniel v. State*, supra; *Koller v. State*, supra; *Chapman v. State*, 504 S.W.2d 912 (Tex.Cr.App.1974). In applying this test, the facts and circumstances of each case must be analyzed to determine whether the language used was of such character. *Overstreet v. State*, supra; *Ramos v. State*, supra." (Emphasis supplied.)

See also *Angel v. State*, 627 S.W.2d 424 (Tex.Cr.App.1982).

Appellant contends that the argument was a comment on his failure to testify for it in effect told the jury "Castillon had talked to the jury about the taking of the confession ... why hadn't the defendant." A review of the argument shows that before the prosecutor was interrupted in midsentence, he stated, "... if it comes between Carabin's and Cannon's credibility...." and not Castillon's as appellant now argues.

■ An indirect allusion which might refer to appellant's failure to testify does not require reversal. *Wright v. State*, 582 S.W.2d 845 (Tex.Cr.App.1979). As appellant even noted in his objection, the reference was indirect. Taken in the context given, the statement was not manifestly intended or of such character that the jury would naturally and necessarily take it as a comment on his failure to testify. See *Nickens v. State*, 604 S.W.2d 101 (Tex.Cr. App.1980) (Opinion on Rehearing). If error, the comment was not so prejudicial that it could not be cured by an instruction to disregard. *Wright v. State*, supra; *Thompson v. State*, 537 S.W.2d 732 (Tex. Cr.App.1976). Appellant's ground of error is overruled.

■ Appellant also asserts that the evidence is insufficient to support an affirmative answer by the jury to special issue number one under Article 37.071(b)(1), V.A. C.C.P. He contends that the evidence is insufficient beyond a reasonable doubt, and is insufficient to rebut the exculpatory evidence introduced by the State. First he argues that the evidence does not show he acted "deliberately" in killing the deceased. In *Granviel v. State*, 552 S.W.2d 107, 123 (Tex.Cr.App.1976), we held that the statutory requirements that the defendant's "conduct be committed deliberately does not mean it must be a premeditated act. There is sufficient evidence in the record from which the jury could conclude that when appellant deliberately stabbed the bound and gagged two-year-old Natasha nine times as she lay on the floor and the

bed, he could reasonably expect that her death would result." In *Duffy v. State*, 567 S.W.2d 197, 209 (Tex.Cr.App.1978), we held that "when appellant entered the deceased's house with a knife and began repeatedly stabbing her, he acted deliberately and with the reasonable expectation he would cause her death." In *Fearance v. State*, 620 S.W.2d 577, 584 (Tex.Cr.App. 1981), this Court wrote that deliberately "is the thought process which embraces more than a will to engage in conduct and activates the intentional conduct." Thus, while from the act of suddenly and impulsively firing a gun can be found the intent to cause the death, such action may not necessarily show that the act was deliberate. To find the act of deliberateness, there must be the moment of deliberation and the determination on the part of the actor to kill. Such determination must necessarily be found from the totality of the circumstances of the individual case. In the instant case the evidence shows the murder weapon, a .22 caliber revolver, had to be pulled back and cocked and then the trigger pulled each time the weapon was fired. A person could not pull the trigger to discharge the revolver. The deceased was shot seven times. Where, as under these circumstances, the deceased has begged the appellant not to kill her and attempts to escape while the appellant is committing repeated acts of deadly violence upon the deceased, such action on the part of the appellant is without a doubt a deliberate act or acts.

What we have said earlier about the claimed exculpatory portion of the confession disposes of the contention that the evidence is insufficient to rebut said exculpatory evidence.

In two grounds of error appellant complains that the trial court erred at the penalty stage of the trial by denying his special requested charges asking the court to define the words "deliberate" and "deliberation."

■ This Court has held on several occasions that such terms have not been de-

fined by statute; thus they are to be understood in their usual acceptation in common language. Such words need not be defined in the charge to the jury. *King v. State*, 553 S.W.2d 105 (Tex.Cr.App.1977); *Russell v. State*, 665 S.W.2d 771 (Tex.Cr.App.1983); *Morin v. State*, 682 S.W.2d 265 (Tex.Cr. App.1983). The trial court did not err in refusing appellant's requested charges.

■ Still further, appellant contends that the evidence is insufficient to establish that there is a probability that he would commit criminal acts of violence that would constitute a continuing threat to society as required by Article 37.071(b)(2), V.A.C.C.P., sometimes known as the second special issue on punishment in a capital murder case.

At the penalty stage of the trial the State offered evidence that approximately one week before the alleged murder the appellant had been placed on probation for burglary. Vincent Walsh, a son of the deceased, testified he observed appellant taking syringes from his sister's room, saying he was going to sell them. He threatened Walsh if he told anyone. A bailiff from another district court related that in a prior proceeding involving appellant he heard appellant threaten a prosecutor by stating, "He has no right to change that. I'll kill that mother-fucker."

In addition, there was the evidence from the guilt stage of the trial. In *Garcia v. State*, 626 S.W.2d 46, 51 (Tex.Cr.App.1982), this Court observed:

"It is clear, however, that in answering the special issue under Article 37.071, V.A.C.C.P., the jury may consider all of the evidence adduced at the guilt stage of the trial. *Duffy v. State*, 567 S.W.2d 197 (Tex.Cr.App.1978); *Felder v. State*, 564 S.W.2d 776 (Tex.Cr.App.1978); *Brock v. State*, 556 S.W.2d 309 (Tex.Cr. App.1977); *Moore v. State*, 542 S.W.2d 664 (Tex.Cr.App.1976). See and cf. *Wallace v. State*, 618 S.W.2d 67 (Tex.Cr.App. 1981) (Concurring Opinion at p. 70). Indeed the circumstances of the offense and the facts surrounding it may furnish greater probative evidence than any other evidence regarding the second special issue submitted at the penalty stage of a capital murder case. *Duffy v. State*, supra, and cases there cited."

See also *Mitchell v. State*, 650 S.W.2d 801 (Tex.Cr.App.1983); *Hawkins v. State*, 660 S.W.2d 65 (Tex.Cr.App.1983); *Smith v. State*, 676 S.W.2d 379 (Tex.Cr.App.1984); *Smith v. State*, 683 S.W.2d 393 (Tex.Cr. App.1984).

The evidence presented at the guilt stage of the trial showed that the deceased and her brother had taken a charitable interest in the welfare of the appellant. The deceased had opened her home to the appellant and permitted him freedom to interact with her family. The appellant's confession reveals that prior to murdering the deceased he had stolen money from one of the children's rooms. The appellant's confession reveals that the deceased begged the appellant not to shoot her again and crawled under the pool table in an attempt to escape the shots which did not come in a flurry but were fired one by one as the appellant would cock the hammer of the pistol and then fire. The appellant dragged the body of the deceased out from under the pool table, ripped open her clothes and attempted to have sexual intercourse with the dead, or dying, body. The appellant took money from the purse of his victim, several guns, prescription drugs and other items from the house and, in a car which belonged to the daughter of the deceased, fled the scene of the crime. This evidence reveals, on the part of the appellant, a total lack of regard for the ownership of property, sanctity of life and respect for the personal dignity of individuals who had gone out of their way to help him. The record is void of any mitigating factors for the conduct of the 17-year-old appellant other than his youth and his illiteracy. In *Ferguson v. State*, 573 S.W.2d 516 (Tex.Cr. App.1978), we held that youth alone would not prevent the imposition of the death penalty. There was sufficient evidence to support the jury's affirmative finding. *Roney v. State*, 632 S.W.2d 598 (Tex.Cr.App. 1982), cited by appellant, is distinguishable

on the facts. Each of these cases must be decided on its own merit. Appellant's ground of error is overruled. *Earvin v. State*, 582 S.W.2d 794 (Tex.Cr.App.1979); *Demouchette v. State*, 591 S.W.2d 488 (Tex.Cr.App.1979); *Crawford v. State*, 617 S.W.2d 925 (Tex.Cr.App.1981).

Appellant also urges that the trial court erred in denying his motion to reconsider the decision sustaining the voluntariness and admissibility of the confession.

After the *Jackson v. Denno* hearing and after the court entered its findings of facts and conclusions of law, see Article 38.22, V.A.C.C.P., the appellant filed a motion requesting the court to reconsider the conclusion that the confession was voluntarily made. The basis of this motion was that appellant had been previously tried for the same offense before another district court, and that the trial judge had granted the motion for new trial on August 31, 1981. Appellant argued the only possible reason for granting a new trial was the court's conclusion that the confession was inadmissible, but because of Article 40.07, V.A.C.C.P., the first trial judge could not comment or give his reason for granting the new trial.

Appellant, in his reconsideration motion, acknowledged his new trial motion was based on prosecutorial suppression of evidence and the ineffective assistance of counsel. He asserted that both of these contentions were wholly dependent upon a finding that the confession was involuntary. The ineffective assistance of counsel contention related to counsel's failure to raise the "Call Dan Carabin" issue while the prosecutorial misconduct contention related to the concealment of that issue.

■ When the motion for reconsideration was presented to the court, the appellant offered no evidence, and the motion was overruled. No error is presented.

■ In a related ground of error appellant contends that the court erred at the hearing on the motion for new trial by refusing to allow him to make a bill of exception by offering the statement of facts from the hearing on his new trial motion at his first trial. He contends that this refusal constitutes reversible error, citing *Simmons v. State*, 548 S.W.2d 386 (Tex.Cr.App.1977), but in the alternative urges this Court to order the instant record supplemented by said statement of facts.

Appellant argues that the inadmissibility of his confession having been previously resolved in his favor could not be relitigated in the instant trial. He contends this is comparable to the law of the case doctrine because the prior trial judge was acting in a quasi-appellate capacity.

The State takes issue with this argument. It contends that there is no basis for saying the only possible reason for the court's action in granting a new trial was the court's conclusion the confession was inadmissible. If the reason for the new trial was the failure to disclose evidence about the confession or the failure of defense counsel to raise an issue, this, says the State, does render the confession inadmissible in a new trial.

The State calls attention to the record which shows that the appellant was permitted to call Judge Mike Machado, the trial judge who had granted the earlier motion for new trial. The trial court offered to permit the appellant to ask Judge Machado why he had granted the motion for new trial. After a recess, the appellant declined the opportunity to interrogate Judge Machado. The State notes appellant would have this Court order up the statement of facts in order to speculate as to the reason the new trial motion was granted when the appellant decided not to have Judge Machado state exactly his reason for granting the motion. The State argues the waiver of any complaint.

Even if it is presumed that Judge Machado granted a new trial because he considered the confession inadmissible, that decision, the State says, has no bearing upon this case. In *Shook v. State*, 156 Tex.Cr.R. 515, 244 S.W.2d 220 (1951) (Opinion on Rehearing), the court was faced with a similar question. In finding no error, this Court stated: "It is rudimentary that

courts are not bound by decision of other courts of equal jurisdiction. The power to establish precedent is lodged in courts of superior jurisdiction." See also *Southern Pipeline v. Deitch*, 451 S.W.2d 814 (Tex. App.—Corpus Christi 1970, writ ref'd n.r. e.). The State thus argues the doctrine of the law of the case has no application to the case at bar.

Still further, the State calls attention to Article 40.08, V.A.C.C.P., which provides in part that "the effect of the new trial is to place the cause in the same position in which it was before any trial had taken place." Double jeopardy questions aside, the State argues the clear purpose of Articles 40.07 and 40.08, V.A.C.C.P., is that upon a new trial being granted, no bar would be raised as to any issue of litigation.

We agree with the State's position. We further observe that in merely offering the statement of facts the appellant made no attempt to lay the proper predicate required by Article 39.01, V.A.C.C.P. The ground of error is overruled.

The judgment is affirmed.

CLINTON and TEAGUE, JJ., concur in the result.

WHITE, J., not participating.