**Jerry Lee ELLIOTT, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 6–87–099–CR.**

Court of Appeals of Texas, Texarkana.

Feb. 14, 1989.

Ebb B. Mobley, Longview, for appellant.

William K. Gleason, Dist. Attys. Office, Longview, for appellee.

GRANT, Justice.

Jerry Lee Elliott appeals from a conviction for delivery of a controlled substance. A jury found Elliott guilty of delivery of methamphetamines by constructive transfer and, having found the enhancement paragraph of the indictment to be true, assessed his punishment at sixty years of confinement and a fine of $10,000.

Elliott asserts four points of error on appeal. He contends that the indictment was fundamentally defective, that the court's charge to the jury was fundamentally defective, that the State made manifestly improper, harmful, and prejudicial remarks during final argument, and that the evidence is insufficient to support a verdict of guilty for delivery of a controlled substance by constructive transfer.

According to the State witness Gene Anderson, an undercover narcotics officer for the Gregg County sheriff's office, the following occurred: On May 18, 1986, he arranged to buy a quantity of methamphetamines from Linda Nelson for $275. Nelson told Anderson that she did not have the desired quantity immediately available and advised Anderson to return. When Anderson returned thirty minutes later, he observed Elliott working on a motorcycle in the parking lot. At this time, Nelson advised Anderson that she had not yet obtained the requested quantity. Anderson then observed Nelson speak to Elliott, after which Elliott left the area on his motorcycle. Before Nelson left, she told Anderson to come back later and that if she had obtained the methamphetamines, the vehicle lights would be flashed. Later that night, Anderson returned and observed Elliott return to Nelson's residence on his motorcycle with the headlights flashing off and on. Anderson then went to the back door of Nelson's residence. Elliott answered the door and asked Anderson if he had the money, and Anderson asked him if he "had the stuff." Anderson counted out $275 and, in accordance with Elliott's in-

structions, placed the money under the doormat. Elliott then told Anderson that the narcotics were in the mailbox at the front of the residence. Anderson remained at the back door for a few minutes. When he heard the front door of the residence close, he went to the front of the residence. At this time he observed Elliott pointing to a plastic bag on the lighted front porch. Elliott was spinning in circles, repeating, "Check it out, check it out." Anderson picked up the plastic bag and left the area. The bag was later determined to contain an eighth of an ounce of methamphetamines.

Linda Nelson, who had subsequently married Elliott, was the only witness called by the defense at the guilt-innocence stage of the trial. She testified that Elliott did not know what was happening on the night in question and that she had the methamphetamines in her apartment, but stalled Anderson so that she would have an opportunity to "cut it" and so that Anderson would not know that she had that amount of methamphetamines in her apartment. At one point when asked, "Where did the dope come from?", she testified, "It was some I didn't know I had." She further testified that she had told Elliott to have Anderson put the money under the doormat, that she had thrown the bag onto the front porch and that she had removed the money from underneath the doormat. According to Nelson, it was her deal and it was her contraband.

■ In his first point of error, Elliott asserts the indictment was fundamentally defective because it failed to provide him notice as to how the constructive transfer was made so that he could prepare his defense. The indictment charges in relevant part that Elliott did

intentionally and knowingly deliver to Gene Anderson a controlled substance listed in penalty group one of the Texas Controlled Substances Act, namely, methamphetamine of less than twenty-eight grams by aggregate weight, including adulterants and dilutants, by constructively transferring said controlled substance.

Elliott specifically complains of the fact that the indictment states he made the delivery to Gene Anderson, not specifying whether delivery was actual or constructive, and then stated he made constructive delivery, without specifying how it was made. He asserts this did not provide him adequate notice as to whether the State intended to show actual or constructive delivery.

A defendant's right to know the nature and cause of the accusation against him must be satisfied from the four corners of the charging instrument and this right is a substantial right. *Adams v. State,* 707 S.W.2d 900 (Tex.Crim.App.1986). An indictment which alleges delivery by constructive transfer provides a defendant with sufficient notice of the acts charged. *Daniels v. State,* 754 S.W.2d 214 (Tex. Crim.App.1988). We overrule Elliott's first point of error.

In his second point of error, Elliott complains of the trial court's charge to the jury. Elliott asserts that the charge was fundamentally defective since the jury was instructed that they could find the defendant guilty of either actual or constructive delivery.

He specifically complains of the charge for providing the definition of both actual and constructive delivery.[1] Elliott asserts that this aspect of the charge necessarily confused the jury by allowing them to reason that they could return a verdict of guilty if they found the defendant made either constructive or actual transfer of the controlled substance. In support of this contention, Elliott relies upon *Selman v. State,* 663 S.W.2d 838 (Tex.Crim.App.1984); *Key v. State,* 555 S.W.2d 753 (Tex.Crim. App.1977); and, *Daniel v. State,* 648 S.W.

2d 354 (Tex.App.–Dallas 1983, no pet.). These cases are distinguishable from the instant case. In *Selman,* the charging instrument omitted an element of the offense; in *Key* and in *Daniel,* the defendant had timely objected to the charge.

Additionally, Tex.Code Crim.Proc. Ann. art. 36.19 (Vernon 1981) provides in part that:

[T]he judgment shall not be reversed unless the error appearing from the record was calculated to injure the rights of defendant, or unless it appears from the record that the defendant has not had a fair and impartial trial. All objections to the charge and to the refusal of special charges shall be made at the time of the trial.

If no objection is made at trial to error in the jury charge, a defendant will obtain a reversal only if the error is so egregious and created such harm that he did not have a fair and impartial trial. *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App. 1984) (Opinion on Motion for Rehearing). Elliott fails to establish that any error was "calculated to injure" his rights and it appears from the record that he had a fair and impartial trial. By failing to raise a timely objection, Elliott has waived the right to complain of the charge on appeal. *Grady v. State,* 614 S.W.2d 830 (Tex.Crim. App. [Panel Op.] 1981); *Toler v. State,* 546 S.W.2d 290 (Tex.Crim.App.1977).

In his third point of error, Elliott asserts that the State's final argument at the guilt-innocence stage was manifestly improper, harmful, and prejudicial and resulted in a denial of his right to a fair and impartial trial. Elliott contends that the prosecutor impermissibly commented upon

---

1. Elliott complains of the following language of the charge:

   By the term "deliver," as used in this charge is meant the actual or constructive transfer from one person to another of a controlled substance, whether or not there is an agency relationship.
   The charge further instructed that a verdict of guilty could be returned if the jury found beyond a reasonable doubt that the defendant ... did intentionally or knowingly deliver, by constructive transfer, a controlled substance

   listed in Penalty Group One of the Texas Controlled Substance Act, namely, methamphetamine, to. Gene Anderson.
   Tex.Rev.Civ.Stat.Ann. art. 4476–15, § 1.02(7) (Vernon Supp.1989) provides in pertinent part that
   "Deliver" or "delivery" means the actual or constructive transfer from one person to another of a controlled substance ... whether or not there is an agency relationship.

his failure to testify in the following statements:

> He wants you to forget about what Gene Anderson testified to, his unchallenged testimony.
>
> Counts out the money to him. He doesn't—he thinks he's giving him two hundred and seventy-five dollars as a gift tax? He never testified paying gift tax on this. No, folks. Sure, he knows exactly what's going on. He and his wife were out there and they're dealing, and they've got a buyer for this deal. We've got actual transfer. We can skate around that, but he thinks he's going to be real smart, "I just won't give you the dope. You have to go get it, but I'll tell you where it's at."
>
> If he didn't mean to cause the result, this deal going through him, getting that dope—folks, I don't know what you're going to believe—you know, not every time we can't just have him come hand you the dope and say, "Here it is."
>
> That's what they were doing between the time—"The money's here. O.K. Let's cut a little. He won't weigh it and we'll go outside and we'll finish the deal." Who's out front? Jerry Elliott. Where's the dope? There. He thinks he's done some big deal. "Oh, the dope's over there. Go pick it up. Go pick it up. Me, oh, I'm not going to to pick it up and hand it to you."

No objection was lodged to any of these statements.

Elliott contends these comments were impermissible allusions to his failure to testify. He asserts that this conduct violates Tex.Code Crim.Proc.Ann. art. 38.08 (Vernon 1979) which provides:

> Any defendant in a criminal action shall be permitted to testify in his own behalf therein, but the failure of any defendant to so testify shall not be taken as a circumstance against him, nor shall the same be alluded to or commented on by counsel in the cause.

The Court of Criminal Appeals has stated that an exception to the general rule of waiver of error by failure to object to improper jury argument exists only when the argument is so prejudicial that an instruction would not have cured the harm. *Landry v. State*, 706 S.W.2d 105, 111 (Tex. Crim.App.1985); *Romo v. State*, 631 S.W. 2d 504 (Tex.Crim.App. [Panel Op.] 1982).

An indirect allusion which might refer to a defendant's failure to testify does not require reversal. *Cannon v. State*, 691 S.W.2d 664, 677 (Tex.Crim.App. 1985), *cert. denied*, 474 U.S. 1110, 106 S.Ct. 897, 88 L.Ed.2d 931 (1986). The prosecutor's statements in the instant case may be indirect references to the defendant's failure to testify, but they are not of such a character that the jury would naturally and necessarily take them as direct comments upon his failure to testify. *See Nickens v. State*, 604 S.W.2d 101 (Tex.Crim.App.1980). Moreover, Elliott has waived any error since the comments were not so prejudicial that they could not have been cured by instructions. *See Landry*, 706 S.W.2d 105; *Cannon*, 691 S.W.2d 664; *Gonzalez v. State*, 746 S.W.2d 878 (Tex.App.–El Paso 1988, no pet.).

Elliott also complains of the prosecuting attorney's injection of his personal opinion into the case by the following statement:

> Well, folks, I'm sorry if I get excited and start yelling, I don't mean to do that, because that's how I feel about drugs, like everyone else.

Elliott did not object to this statement. In the absence of a timely, specific objection, no error is preserved for review. *Gonzalez*, 746 S.W.2d 878. Moreover, the statement is not so prejudicial that an instruction could not have cured the harm. *Landry*, 706 S.W.2d 105.

In his fourth point of error, Elliott asserts that there is insufficient evidence to uphold the verdict of constructive delivery of a controlled substance. In determining whether the evidence is sufficient to support a conviction for the charged offense, the standard of review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable

doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *McGoldrick v. State,* 682 S.W.2d 573 (Tex. Crim.App.1985). If a reasonable hypothesis other than the guilt of the accused remains after such review, proof of guilt is not established to the required degree. *Freeman v. State,* 654 S.W.2d 450, 454 (Tex.Crim.App.1983).

■ There are two requirements with respect to a constructive transfer. First, prior to the alleged delivery, the transferor must have either direct or indirect control of the substance; secondly, the transferor must know of the transferee's existence. *Daniels,* 754 S.W.2d at 221–22. Although a constructive transfer may take several forms, the critical inquiry is whether, prior to the delivery, the contraband was directly or indirectly under the defendant's control. *Daniels,* 754 S.W.2d 214; *Davila v. State,* 664 S.W.2d 722 (Tex.Crim.App.1984); *Queen v. State,* 662 S.W.2d 338 (Tex.Crim. App.1983); *Rasmussen v. State,* 608 S.W. 2d 205 (Tex.Crim.App. [Panel Op.] 1980) (Opinion on Motion for Rehearing).

■ A constructive transfer of a controlled substance may occur when an actor places contraband in a particular location and then advises the recipient of the location so that the recipient can retrieve the narcotics. *Queen,* 662 S.W.2d 338. In the *Daniels* case, the Court cites Black's Law Dictionary 385 (5th ed. 1979), for the following definition of delivery: "What constitutes delivery depends largely on the intent of the parties. It is not necessary that delivery should be by manual delivery." *citing Jones v. Young,* 539 S.W.2d 901, 905 (Tex.Civ.App.–Texarkana, 1976, writ ref'd n.r.e.). The Court in *Daniels* also refers to Ballentine's Law Dictionary (3d ed. 1969) for a definition of delivery as "[f]or some purposes, a delivery is accomplished by nothing more than making a thing available to another, placing it within his reach, notwithstanding there is no actual handing of the thing from one person to another." *Daniels,* 754 S.W.2d at 220. As in possession cases, *Duff v. State,* 546 S.W.2d 283 (Tex.Crim.App.1977), the control does not

need to be exclusive and joint control is sufficient. While mere presence of the appellant at the time of the transfer is not enough, surrounding facts and circumstances may be used to show that the appellant jointly controlled the contraband.

The relevant facts linking the defendant to the contraband in the present case include evidence that Nelson went over to talk to Elliott after the offer to purchase had been made, that Elliott left on his motorcycle, that Elliott later returned flashing his lights in accordance with Nelson's instructions to the buyer that the lights would be flashed if she had obtained the contraband, that Elliott told the buyer where to put the money and watched as the money was counted out in his presence, that Elliott told the buyer that the contraband would be in the mailbox in front of the house, that Elliott then entered the house and the buyer heard the front door slam, that Elliott was in front of the house in a very excited state when Anderson arrived there, that Elliott was spinning in circles pointing to the contraband and inviting Anderson to check it out, and that the contraband was in plain view in a plastic bag lying on the lighted front porch.

The jury, as trier of facts, was free to reject Nelson's conflicting testimony as to the lack of involvement of Elliott, but even accepting Nelson's version that she had placed the contraband on the front porch, there is a strong inference that it was placed there based upon Elliott having informed her that the money had been placed under the mat.[2] Elliott's guidance to the location of the contraband, his invitation to the purchaser to "check it out," and his instructions to the buyer as to where to place the money and where to go to get the contraband after the money had been so placed were facts from which the jury could conclude that Elliott had either direct or indirect control of the contraband. Under the record, we conclude that reasonable jurors could have found from the evidence beyond a reasonable doubt that Elliott was

**2.** Nelson testified that she did not see the money      placed under the mat.

guilty of a constructive delivery of meth-amphetamines to Anderson as charged.

The judgment below is affirmed.