**William COMBEST, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 03–96–00085–CR**

Court of Appeals of Texas,
Austin.

Dec. 10, 1998.

Rehearing Overruled Jan. 14, 1999.

Erik S. Goodman, Austin, for Appellant.

Marcos Hernandez, Jr., Crim. Dist. Atty., Jodi L. Brown, Asst. Crim. Dist. Atty., San Marcos, for State.

Before Justices POWERS, KIDD and DALLY.*

CARL E.F. DALLY, Justice (Retired).

Appellant William Combest entered a nolo contendere plea and was convicted of the misdemeanor offense of driving a motor vehicle in a public place while intoxicated. *See* Act of May 27, 1983, 68th Leg., R.S., ch 303 § 3, 1983 Tex. Gen. Laws 1568, 1575 (Tex. Rev.Civ.Stat.Ann. art. 6701*l*–1(b), since amended and codified at Tex. Penal Code Ann. § 49.04 (West 1994 and Supp.1998)). We affirmed the trial court's judgment and overruled appellant's sole point of error which asserted that the trial court erred in refusing to suppress evidence obtained from an analysis of his blood because the blood was unlawfully seized in violation of his constitutional rights. *See Combest v. State,* 953 S.W.2d 453 (Tex.App.—Austin 1997, pet. granted).

* Before Carl E.F. Dally, Judge (retired), Court of Criminal Appeals, sitting by assignment. *See*

Appellant filed, and the Court of Criminal Appeals granted, a petition for discretionary review. The Court of Criminal Appeals, in an unpublished majority opinion, vacated our decision and remanded the cause for reconsideration in light of *Guzman v. State,* 955 S.W.2d 85 (Tex.Crim.App.1997). Our decision in this case was handed down before the Court of Criminal Appeal's decision in *Guzman.* We relied upon *DuBose v. State,* 915 S.W.2d 493 (Tex.Crim.App.1996), but it was expressly overruled by *Guzman.* We will comply with the Court of Criminal Appeal's mandate. We will not step "outside the scope of [the] Court's remand order." *See Williams v. State,* 829 S.W.2d 216, 217 (Tex. Crim.App.1992).

Following the lead of the United States Supreme Court in *Ornelas v. United States,* 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996), the Court of Criminal Appeals held that although great weight should be given to the inferences drawn by trial judges and law enforcement officers, determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal. *Guzman,* 955 S.W.2d at 87.

[I]t is very difficult to articulate a comprehensive consensus rule on the amount of deference appellate courts should afford to lower court rulings.

However, as a general rule, the appellate courts, including this Court, should afford almost total deference to a trial court's determination of the historical facts that the record supports especially when the trial court's fact findings are based on an evaluation of credibility and demeanor. *See, e.g., Villarreal [v. State],* 935 S.W.2d [134] at 139–41 [(Tex.Cr.App.1996)] (McCormick, P.J., concurring). The appellate courts, including this Court, should afford the same amount of deference to trial courts' rulings on "application of law to fact questions," also known as "mixed questions of law and fact," if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. *See id.* The appellate courts may review

Tex. Gov't Code Ann. § 74.003(b) (West 1998).

*de novo* "mixed questions of law and fact" not falling within this category. *See id.* This Court may exercise its discretion to review *de novo* these decisions by the intermediate appellate courts. *See id.* This is about as comprehensive a statement of the applicable standards that we can provide. *See Villarreal,* 935 S.W.2d at 139 (McCormick, P.J., concurring) (if trial court "is not in an appreciably better position" than the appellate court to decide the issue, the appellate court may independently determine the issue while affording deference to the trial court's findings on subsidiary factual questions.).

\* \* \* \* \*

Our decision does not call into question the "very definition of abuse of discretion." We merely decide that an abuse of discretion standard does not necessarily apply to "application of law to fact questions" whose resolution do not turn on an evaluation of credibility and demeanor.

*Guzman,* 955 S.W.2d at 89; *see also Loserth v. State,* 963 S.W.2d 770, 771–73 (Tex.Crim. App.1998).

The issue presented in this case is whether appellant's consent to search was voluntary. Voluntary consent to search is an exception to the requirement of probable cause for a warrantless search. Therefore, by remanding this case, the Court of Criminal Appeals has logically expanded the Guzman *de novo* standard of appellate review to include the determination of voluntariness of consent to search.

The evidence admitted on the hearing of appellant's motion to suppress will be summarized. On January 30, 1994, Trooper Daryl White responded to a call concerning a two vehicle head-on collision. Appellant suffered injuries to his face and hand and was bleeding. Trooper White talked to appellant and detected an odor of alcohol and observed his bloodshot eyes. Appellant, however, responded appropriately to Trooper White's questions. Due to appellant's injuries, Trooper White did not have him perform any sobriety tests. Appellant was not placed under arrest and was treated at Central Texas Medical Center. At the hospital Trooper White asked appellant if he would give a specimen of his blood for analysis. Trooper White gave appellant *Miranda* warnings and read appellant the DWI statutory warning (DIC–24). The DWI statutory warning advises a person that he has been placed under arrest for driving while intoxicated and that a refusal to submit to a taking of blood will result in an automatic license suspension and may be admissible as evidence against the person in court. Trooper White also had appellant sign a DPS consent form that states that the person consenting to give the blood specimen has been placed under arrest. After appellant gave a blood specimen, Trooper White told him that a determination of whether to issue an arrest warrant would be made after an analysis of the blood specimen. Trooper White explained to appellant that if he passed the test "he probably would not hear from me on it." Trooper White admitted that he hadn't made any determination of whether appellant was intoxicated and wanted to wait for the blood test results. Trooper White used the DIC–24 statutory warning to obtain appellant's blood because he did not have an equivalent form for use in a non-arrest situation. Appellant did not testify.

■ Appellant and the State both agree, and the record affirms, that appellant was not under arrest nor in custody at the time he consented to give the blood specimen. Because appellant was not under arrest when he gave the blood specimen, the statutory implied consent provision for taking a blood specimen was not applicable. *See* Act of May 27, 1983, 68th Leg., R.S., ch. 303, § 4, 1983 Tex. Gen. Laws 1568, 1577 (Tex.Rev. Civ.Stat.Ann. art. 6701*l*–5, § 1, 2(a)(b) since amended and codified at Tex. Transp. Code Ann. § 724.011–724.019 (West Supp.1997)); *Aliff v. State,* 627 S.W.2d 166, 168 (Tex.Crim. App.1982); *Nottingham v. State,* 908 S.W.2d 585, 589 (Tex.App.—Austin 1995, no pet.). The State urges that the blood specimen obtained from appellant without a warrant was lawfully obtained because appellant gave his consent.

■ The taking of a blood specimen is considered a search and seizure within the

meaning of the Fourth Amendment to the United States Constitution. *Schmerber v. California,* 384 U.S. 757, 769, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); *Aliff,* 627 S.W.2d at 168–69. Both federal and state constitutions prohibit unreasonable searches and seizures. *Juarez v. State,* 758 S.W.2d 772, 775 (Tex. Crim.App.1988); *State v. Comeaux,* 786 S.W.2d 480, 483 (Tex.App.—Austin 1990), *aff'd,* 818 S.W.2d 46 (Tex.Crim.App.1991). A warrantless search is per se unreasonable subject to only a few exceptions. *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *Reyes v. State,* 741 S.W.2d 414, 430 (Tex.Crim.App.1987). Consent for a search is an exception to the requirement for a warrant and probable cause. *Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Roth v. State,* 917 S.W.2d 292, 299 (Tex.App.—Austin 1995, no pet.).

■ Whether consent to a search is in fact voluntary and not the product of duress and coercion, express or implied, is a question of fact to be determined from the totality of the circumstances. *See Schneckloth,* 412 U.S. at 218, 93 S.Ct. 2041. The Supreme Court has held that the prosecution's burden of proof in a suppression hearing to determine voluntariness of consent to search is by a preponderance of the evidence. *United States v. Matlock,* 415 U.S. 164, 177, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). The United States Court of Appeals for the Fifth Circuit overruled prior cases and adopted the preponderance of the evidence standard of proof in suppression hearings to determine the voluntariness of consent to search. *United States v. Hurtado,* 905 F.2d 74, 75 (5th Cir.1990) (en banc). However, the standard of proof which Texas courts have applied in determining whether consent is voluntary is proof by clear and convincing evidence. *See, e.g., Allridge v. State,* 850 S.W.2d 471, 493 (Tex. Crim.App.1991); *Roth,* 917 S.W.2d at 300.

Appellant gave written consent to the search. Therefore, the pivotal issue before the trial court at the suppression hearing was whether appellant's written consent to give a specimen of his blood was voluntary. The "Police Officer D.W.I. Statutory Warning" form DIC–24 that Trooper White read to appellant was not appropriate for use when appellant was not under arrest. Although appellant was not under arrest, the form read to him stated that he was under arrest. Also, that form stated that appellant's refusal to give a specimen of his blood for analysis would result in the suspension of his drivers license for ninety days and that in any subsequent prosecution his refusal might be admissible. After the warning was read to appellant he signed a "Subject's Consent Form" which also stated that appellant had been placed under arrest for driving a motor vehicle on a public highway while intoxicated. Appellant contends that even though he was not under arrest, the language of these forms brought "great psychological pressure to bear upon the decision to give a blood specimen." Moreover, appellant argues that the language of these forms that misstated the consequences of his refusal to give a blood specimen was so coercive that his consent was not voluntary. However, it is not the presence of a coercive factor which makes consent involuntary but rather that the consent was given as a result of the coercion.

■ To summarize, it is our duty in this case to determine *de novo* from the totality of the circumstances presented by the record whether the State proved by clear and convincing evidence that appellant's consent for the taking of his blood was voluntary. Because appellant has combined both federal and state claims that his blood was unlawfully obtained in the same point or error, we have not reviewed his state claim. *See Lawton v. State,* 913 S.W.2d 542, 558 (Tex.Crim. App.1995); *Robinson v. State,* 851 S.W.2d 216, 222 n. 4 (Tex.Crim.App.1991); *Riordan v. State,* 905 S.W.2d 765, 772 n. 6 (Tex.App.— Austin 1995, no pet.); *Martinets v. State,* 884 S.W.2d 185, 188–89 (Tex.App.—Austin 1994, no pet.).

Courts and commentators have enumerated various factors, which are found within the totality of the circumstances in different cases, that should be considered in determining the voluntariness of consent searches. LaFave discusses a number of factors that bear upon the validity of consent. Among these factors are: (1) a claim of authority, (2) a show of force or coercive surroundings, (3)

a threat to seek or obtain a search warrant, (4) an officer's deception of identity or purpose, (5) prior unlawful police action, (6) whether *Miranda* warnings were given, (7) whether a defendant was aware of his Fourth Amendment rights, (8) a defendant's confession or other cooperation, (9) defendant's denial of guilt, and (10) a defendant's maturity, sophistication, mental or emotional state. 3 Wayne R. LaFave, *Search and Seizure, A Treatise on the Fourth Amendment* § 8.2, 643–713 (3d ed.1996).

The United States Court of Appeals for the Fifth Circuit has settled on six factors it considers in determining the voluntariness of consent to search. They are: (1) the voluntariness of a defendant's custodial status, (2) the presence of coercive police procedures, (3) the extent and level of a defendant's cooperation with the police, (4) the defendant's awareness of his right to refuse to consent, (5) the defendant's education and intelligence, and (6) the defendant's belief that no incriminating evidence will be found. *See United States v. Brown,* 102 F.3d 1390, 1396 (5th Cir.1996); *United States v. Kelley,* 981 F.2d 1464, 1470 (5th Cir.1993); *United States v. Yeagin,* 927 F.2d 798, 800 (5th Cir.1991); *United States v. Phillips,* 664 F.2d 971, 1023–24 (5th Cir.1981). *See also United States v. Hernandez,* 93 F.3d 1493, 1500 (10th Cir.1996); *United States v. Sanchez–Valderuten,* 11 F.3d 985 (10th Cir.1993).

■ In this case, the totality of the circumstances included a number of factors for consideration in determining whether appellant voluntarily consented to give a specimen of his blood: (1) Appellant was not under arrest or in custody when he consented to give a blood specimen for analysis. Appellant was not arrested until several months later after the blood test results were obtained. (2) When he gave consent, although not seriously injured, appellant was in a medical center and not in coercive jail house surroundings. (3) No physical force was used on appellant and he was cooperative. (4) Appellant was not interrogated by the officer and the officer did not ask appellant to perform any of the customary field sobriety tests. (5) The officer did not claim to have, or threaten to obtain, a search warrant.

(6) Appellant was given *Miranda* warnings. (7) Appellant makes no claim that he was unaware of his Fourth Amendment rights and there is nothing to rebut the presumption that he was aware of those rights. (8) There is no claim that appellant was immature, uneducated, or unsophisticated. (9) It may reasonably be inferred from the circumstances that appellant was motivated to give his blood for analysis because of a belief it would show he was not intoxicated. (10) At the time consent was given by appellant, he was not under arrest and he voiced no concern about the wording of the forms read to him by the officer.

■ Appellant's claim that psychological coercion resulting from the wording of the forms caused him to consent to give his blood for analysis is not supported by any of his conduct at the scene or at the medical center, and nothing in the record suggests hesitation, question, or protest on his part to do what the trooper asked him to do. His belated claim is overcome by the circumstances. The totality of the circumstances are quite different in this case from the cases relied upon by appellant where consent to search was held involuntary. For example, in *Erdman,* when the defendant gave his consent to take a breath test, he was under arrest; he was told by a trooper that if he refused the breath test DWI charges would be filed and he would be placed in jail. *See Erdman v. State,* 861 S.W.2d 890, 891 (Tex.Crim.App. 1993). Indeed, in the instant case, after evidence was heard on the motion to suppress, appellant's counsel conceded "Judge, I would agree that there's no *Erdman* question here."

On reconsideration we have determined *de novo* and hold that the totality of the circumstances presented by the record show that the State proved by clear and convincing evidence that appellant's consent to the taking of his blood for analysis was voluntary.

The trial court's judgment is affirmed.