No. 04-97-00911-CR

Edward Rene GOMEZ,

Appellant

v.

The State of TEXAS,

Appellee

From the 290th Judicial District Court, Bexar County, Texas

Trial Court No. 96-CR-4832

Honorable Sharon MacRae, Judge Presiding


Opinion by: Paul W. Green, Justice

Sitting: Catherine Stone, Justice

 Paul W. Green, Justice

 Karen Angelini, Justice

Delivered and Filed: November 17, 1999

AFFIRMED

 Appellant, Edward Rene Gomez, was convicted of the offense of intoxication
manslaughter.(1) Trial was before a jury and punishment was assessed by the jury at 16 years
confinement within the Texas Department of Criminal Justice/Institutional Division and a
fine of $5000. In eight points of error, Gomez makes three basic arguments: first, his
consent to draw a blood sample was involuntary; second, the testimony of the State's expert
regarding the alcohol content of his blood was unreliable; third, the State improperly
commented on his failure to testify during trial and at sentencing. We overrule appellant's
points of error and affirm the trial court's judgment.

Background

 Gomez was involved in an automobile accident on June 21, 1996. Following the
accident, he was taken to a local hospital to be treated for minor injuries. At the hospital he
was approached by San Antonio Police Officer Michael Moore. Officer Moore addressed
Gomez and read a form stating that he was under arrest for driving while intoxicated. He
then requested permission to take a blood sample from Gomez. Gomez orally consented to
have his blood drawn.

 At the hearing to suppress evidence of Gomez' blood sample, there was conflicting
testimony concerning what was said between Officer Moore and Gomez. It is undisputed
that Officer Moore read San Antonio Police Department form DIC-24. This form contains
the statutorily required warnings that must be administered before a breath or blood sample
may be taken from a suspect who has been arrested for an offense involving the operation
of a motor vehicle while intoxicated. The form begins with the language "You are under
arrest for the offense of driving while intoxicated."(2) However, it was undisputed at all
phases of trial that Gomez was not under arrest at the time the warnings were administered
to him.

Consent for Blood Testing

 Gomez' first and fifth points of error involve the implied consent statute, under which
a person arrested for DWI is deemed to consent to the taking of a breath or blood sample.
See Tex. Transp. Code Ann. 724.011-724.019 (Vernon 1997). Gomez argues correctly
that the implied consent provision of the statute cannot be used to supply consent in his case.
Because Gomez was not under arrest when he gave the blood specimen, the statutory
implied consent provision for taking a blood specimen is not applicable. See id.; Aliff v.
State, 627 S.W.2d 166, 168-69 (Tex. Crim. App. 1982); Nottingham v. State, 908 S.W.2d
585, 58 (Tex. App.-Austin 1995, no writ.). Likewise, Gomez' complaint that the technician
who took the sample was not qualified under the statute fails because the portions of the
statute that mandate certain procedures and personnel who must be involved in drawing
blood under the doctrine of implied consent are inapplicable. Appellant's first and fifth
points of error are overruled.

 Gomez' second, third and fourth points of error involve the effect that Officer
Moore's reading of the DIC-24 warning had on him. Gomez argues that his consent was
rendered involuntary because he was misinformed about being under arrest at the time he
consented to have blood drawn. The State urges that the blood specimen obtained from
Gomez without a warrant was lawfully obtained because Gomez gave his consent.
Testimony at the hearing on Gomez' motion to suppress was conflicting on this issue.(3)

 Whether consent to a search is in fact voluntary and not the product of duress and
coercion, express or implied, is a question of fact to be determined from the totality of the
circumstances. See Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973); see also Erdman
v. State, 861 S.W.2d 890, 895 (Tex. Crim. App. 1993) (Baird, J., concurring). The standard
applied by Texas courts to determine whether consent is voluntary is proof by clear and
convincing evidence. See Allridge v. State, 850 S.W.2d 471, 493 (Tex. Crim. App.1991);
Combest v. State, 981 S.W.2d 958, 961 (Tex. App.-Austin 1998, pet. ref'd). Appellate
courts should afford almost total deference to a trial court's determination of the historical
facts when it involves an evaluation of the credibility and demeanor of the witnesses,
because the trial court is in the best position to make that factual determination. See
Villareal v. State, 935 S.W.2d 134, 139-41 (Tex. Crim. App. 1996) (McCormick, P.J.,
concurring); Combest, 981 S.W.2d at 959.

 The issue before the trial court at the suppression hearing was whether Gomez' oral
consent to give a specimen of blood was voluntary. The form DIC-24 that Officer Moore
read to Gomez was not intended for use when a suspect is not under arrest. Although
Gomez was not under arrest, the form read to him stated that he was under arrest. Also, that
form stated that refusal to give a specimen of blood for analysis would result in the
suspension of his drivers license for ninety days and that in any subsequent prosecution his
refusal might be admissible.

 There are a number of factors that courts use to determine the voluntariness of
consent. Among these factors are: (1) a claim of authority, (2) a show of force or coercive
surroundings, (3) a threat to seek or obtain a search warrant, (4) an officer's deception of
identity or purpose, (5) prior unlawful police action, (6) whether Miranda warnings were
given, (7) whether a defendant was aware of his Fourth Amendment rights, (8) a defendant's
confession or other cooperation, (9) defendant's denial of guilt, and (10) a defendant's
maturity, sophistication, mental or emotional state. 3 Wayne R. LaFave, Search and
Seizure, A Treatise on the Fourth Amendment 8.2, 643-713 (3d ed.1996); see also
Combest, 981 S.W.2d at 961-962.

 The facts of this case are almost identical to those in Combest. In fact, we find only
three differences worth noting. First, in Combest, the defendant was read his Miranda
rights; that was not done in this case. Second, in Combest, the defendant signed a written
consent form; here, the consent was oral. Third, in Combest, nothing in the trial record
suggested any "hesitation, question, or protest on [the defendant's] part to do what the
trooper asked him to do." Combest, 981 S.W.2d at 962. Here, there was conflicting
testimony as to whether Gomez questioned whether he had a right to refuse to give the
sample.

 Because Gomez was not under arrest, the failure to administer Miranda warnings
does not render his consent invalid. Nor does the fact that his consent was given orally
affect its validity. It is only the question concerning what transpired between Gomez and
Officer Moore that might serve to distinguish the outcome of this case from that in Combest.
 Officer Moore's version of the story is that Gomez consented without protest or
hesitation after the DIC-24 form was read to him. Gomez claims that he questioned whether
he could refuse to have blood drawn and that Moore told him he could not. We cannot say
that it was an abuse of the trial court's discretion to admit the blood sample based on the
conclusion that Gomez' consent was voluntary. Appellant's second, third and fourth points
of error are overruled.Expert Testimony

 In his sixth point of error, Gomez challenges the reliability of the testimony of the
State's expert witness, James Garriott, regarding extrapolation of Gomez' blood alcohol
level. However, the court's charge to the jury contained an instruction which allowed the
jury to find that Gomez was intoxicated while operating his vehicle either because (1) he had
a blood alcohol level at or above 0.10 or (2) there was other evidence in the record from
which the jury could infer that he did not have normal use of his mental or physical faculties
by reason of the introduction of alcohol. See Hartman v. State, 1999 WL 591346, *4 (Tex.
App.-San Antonio 1999, pet. filed). Appellant does not complain that the jury charge
allowed a finding of intoxication by reason of impairment, nor does he challenge the
sufficiency of the evidence on impairment. Therefore, even if we assume the expert
testimony was improperly admitted, Gomez cannot show he was harmed by that testimony.
See id. 

 There is sufficient evidence of impairment in the record. Witnesses at the scene
testified that Gomez passed them, while they sat at a red light, at such a high rate of speed
that their car rattled. He then proceeded through the light and struck the car in the
intersection without ever applying his brakes. Officers at the accident scene testified there
were no skid marks at the scene, and that the absence of skid marks indicates the driver
might have been impaired. There is testimony from Gomez' passenger that he and Gomez
drank a dozen beers together over a three hour period just prior to the accident. Gomez told
the paramedic at the scene that he and his friend shared "two or three pitchers." From this
evidence, a jury could reasonably infer that Gomez was impaired at the time he was
operating his vehicle. Because we conclude that any error in admitting the testimony of
Garriott was harmless, we overrule the point of error.

Improper Argument

 In points seven and eight, Gomez complains of statements made by the State during
both the guilt/innocence and punishment phases of trial. In point of error seven, Gomez
complains of the following statements made by the State during argument at the
guilt/innocence phase of trial:

And you know what, don't go back there and allow yourselves to imagine all
various scenarios for why maybe that could be other than intoxication,
because you're only allowed to consider what's come from the witness stand
and reasonable inferences from that only. You don't get to say I wonder if
maybe he fell asleep and his friend grabbed the wheel, or maybe he had a
brake failure or all these silly things. You can't do that. That's not in
evidence. There's absolutely not an ounce of it to suggest any of those things.
So if any of the jurors start to do that, tell them no, you can't. All you can
consider is reasonable deductions from what you heard. And bottom line is
you heard no explanation for that other than . . .


 In order to constitute improper comment on the defendant's failure to testify, the
offending language, when viewed from the jury's standpoint, must be manifestly intended
or be of such a character that the jury would naturally and necessarily take it as a comment
on the accused's failure to testify. Montoya v. State, 744 S.W.2d 15, 35 (Tex. Crim. App.
1987). For an indirect comment to constitute reversible error, it must call for a denial of an
assertion of fact or contradictory evidence that only the defendant is in a position to offer.
See Livingston v. State, 739 S.W.2d 311, 337 (Tex. Crim. App. 1987). It is not sufficient
that the language might be construed as an implicit or direct allusion as to the defendant's
failure to testify. See id. at 338. If the language used can reasonably be construed as
referring to the defendant's failure to produce testimony or evidence from sources other than
himself, reversal is not required. Id. Because the statements of which Gomez complains are
indirect comments on his failure to testify, we must determine whether they call for a denial
of an assertion of fact or contradictory evidence that only Gomez was in a position to offer.

 There is ample testimony in the record from witnesses other than Gomez to which the
State's argument could refer. For example, there was testimony from the passenger in
Gomez' vehicle, Andrew Cuellar, that he was asleep at the time of the accident. There was
also testimony from police officers regarding the absence of skid marks at the scene of the
accident. The prosecutor's comments could have reasonably been interpreted as an
admonition to the jury to consider only the theories and facts presented by these witnesses,
and not to assume facts about the accident not in evidence. Point of error seven is overruled.

 In point of error eight, Gomez complains of the following statements made by the
State during argument at the punishment phase of trial:

And you know from his prior DWI that he hasn't gotten the picture. His mom
and dad have been up here this morning saying that he hasn't learned his
lesson. What's it going to take? What's it going to take? One more
headline? One more dead body on the street? No. This is punishment. This
is not about forgiveness. This is the punishment phase of the trial. And you
need to punish the defendant for his own arrogance and his own need for
personal convenience. On June 21st, '96, no effort at all to get a designated
driver, to get a cab. He was thinking about his own hide. And right now
that's all he's thinking about. You can bet he's not thinking about Gabe
Stevens. He's thinking about himself.


 Here, the prosecutor's argument could have been in reference to several witnesses
who testified on behalf of the defendant. Gomez' parents and two pastors all testified at
trial. None of these witnesses testified that Gomez made remarks indicating he was thinking
about Gabe Stevens (the decedent). The language at issue can be reasonably construed as
a reference to Gomez' failure to call any witnesses who could testify that he was concerned
about his role in the death of Gabe Stevens. Such evidence is relevant to punishment.
Appellant's eighth point of error is overruled.

Conclusion

 Having overruled all of Gomez' issues, we affirm the trial court's judgment.



 PAUL W. GREEN,

 JUSTICE


DO NOT PUBLISH

1. Paragraphs A & B of the indictment returned against Gomez alleged offenses pursuant to Tex. Penal Code Ann.
 49.08, (Vernon 1989), and paragraph C alleged an offense pursuant to Tex. Penal Code Ann. 19.04, (Vernon 1989).
2. San Antonio Police Department form DIC-24 reads (in relevant part) as follows:


You are under arrest for Driving while intoxicated. You will be requested to submit to the taking of a specimen of your
breath/blood for the purposes of analysis to determine the alcohol concentration or the presence of a controlled substance,
a drug, a dangerous drug, or any other substance in your body.


If you refuse to give the specimen, that refusal may be admissible in a subsequent prosecution, and your license, permit,
or privilege to operate a motor vehicle will be automatically suspended for not less than ninety (90) days, whether or not
you are subsequently prosecuted as a result of the arrest.


If you give a specimen designated by me, and an analysis of the specimen shows that you have an alcohol concentration
of a level specified in section 49.01, Texas Penal Code, your license, permit, or privilege to operate a motor vehicle will
automatically be suspended for not less than sixty (60) days, whether or not you are subsequently prosecuted as a result
of the arrest. . . .
3. Gomez testified that after Officer Moore read him to him from San Antonio Police Department form DIC-24,
Gomez said "I guess I have no choice then." Gomez further testified that Officer Moore's response was "In these cases
you do not usually have a choice, in a fatality." Officer Moore, however, testified that he never said that anything like
"in these kinds of cases, blood is drawn," and that Gomez never said anything to the effect of "I guess I have no choice
then." Gomez testified that he would not have consented if he had not been told by Officer Moore that he was under
arrest.