# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00668-CR

**Denise Doty, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT
### NO. 9034062, HONORABLE JON N. WISSER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant Denise Doty guilty of intoxication manslaughter and assessed a fifteen-year prison term. *See* Tex. Pen. Code Ann. § 49.08 (West 2003). She contends that evidence of her alcohol concentration should have been suppressed as the fruit of an unlawful search and seizure. She also contends that evidence regarding an earlier arrest for driving while intoxication should not have been admitted. We affirm the conviction.

Appellant was driving home at 3:30 a.m. on December 28, 2001, when she ran a red light, turned into a lane of oncoming traffic, and collided with a car driven by Meredith Sowards. Sowards was killed instantly. Civilian and police witnesses testified to appellant's apparent intoxication at the scene. Appellant was taken to Brackenridge Hospital where a sample of her blood was drawn about one hour after the collision. A test showed that her alcohol concentration was 0.19.

*Blood Test*

Generally speaking, taking a blood sample is a search and seizure within the scope of the Fourth Amendment to the United States Constitution and article I, section 9 of the Texas Constitution. *Schmerber v. California*, 384 U.S. 757, 767 (1966); *Aliff v. State*, 627 S.W.2d 166, 169 (Tex. Crim. App. 1982).[1] It is undisputed that when appellant's blood was drawn, she was not under arrest and no warrant had been issued. In her first point of error, appellant urges that the test result should have been suppressed because the blood sample was taken without her express or implied consent.

A person who is arrested for an offense arising out of acts alleged to have been committed while she was operating a motor vehicle in a public place while intoxicated is deemed to have consented to the taking of specimens of her breath or blood for analysis. Tex. Transp. Code Ann. § 724.011(a) (West 1999). A police officer may require that a specimen be taken if the person is arrested for an offense under penal code chapter 49 and the officer reasonably believes that a fatal accident has occurred as a result of the offense. *Id*. § 724.012(b) (West Supp. 2004-05).[2] Appellant argues that any request for a blood specimen must fall within the parameters of section 724.012 and, because she had not been arrested, the taking of her blood was unlawful.

"Compliance with the implied consent statute [is] not necessary to satisfy the Fourth Amendment, and the implied consent statute does not offer protection greater than the Fourth Amendment." *Beeman v. State*, 86 S.W.3d 613, 616-17 (Tex. Crim. App. 2002). The "implied

_____

[1] Appellant does not contend that the Texas Constitution provides her greater protection than the United States Constitution.

[2] The amendment of section 724.012 effective September 1, 2003, is irrelevant to this cause.

consent statutes do not prevent the State from obtaining evidence by alternative constitutional means." *Id*. at 616. The fact that appellant had not been arrested means that the implied consent statutes do not apply here and the State must justify the blood draw in some other way. *Combest v. State*, 981 S.W.2d 958, 960 (Tex. App.—Austin 1998, pet. ref'd).

Consent for a search is an exception to the Fourth Amendment requirement of a warrant and probable cause. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973); *Combest*, 981 S.W.2d at 961. The State argues that appellant expressly consented to the blood draw. Appellant urges that her consent, if any, was not voluntary. We must determine whether the State proved by clear and convincing evidence that appellant voluntarily consented to the taking of her blood. *Combest*, 981 S.W.2d at 961.

Appellant was not seriously injured in the collision. Although she told emergency medical personnel that she did not want to go to the hospital, they placed her on a stretcher with a neck brace and transported her by ambulance to the hospital for a more thorough examination. One EMS worker testified that while they were trying to convince appellant to go to the hospital, a police officer told her that "she was going to go to jail if she didn't go to the hospital." No one else remembered hearing such a statement.

Department of Public Safety Trooper Tim Gage was dispatched to the hospital to obtain a sample of appellant's blood. Gage testified that he found appellant lying on an examining table in the emergency room. A backboard prevented her from moving her head. Gage advised appellant of her rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966). He then asked her if she was willing to give a blood specimen and explained to her that a nurse would draw the blood.

3

Gage also told appellant that the purpose of the blood sample was to determine the amount of alcohol in her blood. Gage testified that appellant told him she had "no problem with it."

Gage testified that he did not arrest appellant, but that he considered the blood sample to be mandatory and he would not have allowed appellant to leave the hospital without giving it. Gage said that he did not tell appellant either that the blood draw was mandatory or that she had a right to refuse. He testified that "when you ask someone if they would be willing to give a blood specimen, that's implied that she could say yes or no."

The blood sample was taken by a registered nurse, Michael Riffle. Riffle testified that he also explained the purpose of the sample to appellant and obtained her consent before drawing the blood. Riffle testified that he would not have taken the sample if appellant had objected or if she had indicated that she believed she had no choice in the matter. Riffle said that he would not have drawn appellant's blood if he had heard any police officer tell her that the sample was mandatory, but instead would have called his supervisor for advice.

Appellant testified at the suppression hearing that she did not want to go to the hospital because she was not injured and because she did not have insurance. She said that she was told by an EMS technician and a police officer that she "can either stay here and wait for DPS to arrive on the scene, or you can go in an ambulance to Brackenridge Hospital. And I picked to go to the hospital because those were the only two choices I had." Appellant testified that Trooper Gage told her at the hospital that the nurse was going to draw a sample of her blood and that she "[didn't] have any choice because [she had] been in a fatality accident."

4

Appellant argues that she did not voluntarily consent to the taking of her blood because she was transported to the hospital against her will, because she was physically restrained on the backboard, because Gage testified that she was not free to go without giving a blood sample, and because she was not informed that she had a right to withhold her consent. But appellant's own testimony shows that her primary concern about going to the hospital was financial, and the trial court could discount the other testimony suggesting that appellant had been threatened with adverse consequences if she did not go. Appellant's physical restraint on the backboard was for medical, not police, purposes. Although knowledge of the right to refuse consent is a factor to be taken into consideration, such knowledge is not a prerequisite of an effective consent. *Schneckloth*, 412 U.S. at 227. Both Gage and Riffle testified that no demand for the blood sample was made and that appellant was asked for and freely gave her consent after being told that the blood sample would be tested for alcohol content.

When reviewing a ruling on a motion to suppress evidence, we defer to the trial court's factual determinations but review *de novo* the court's application of the law to the facts. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). Viewing the evidence in this record in the light most favorable to the court's ruling, we conclude that the State proved by clear and convincing evidence that appellant voluntarily consented to the blood draw. Point of error one is overruled.

### *Previous Incident*

#### *Background*

Appellant's three remaining points of error relate to an incident that occurred on August 1, 2001, approximately five months before the fatal collision. Before trial, the State notified

5

appellant that it intended to offer evidence at the punishment stage that, on August 1, 2001, she had committed the offense of driving while intoxicated. *See* Tex. Code Crim. Proc. Ann. art. 37.07, § 3(g) (West Supp. 2004-05). While the jury was deliberating appellant's guilt, a hearing was held to consider appellant's objections to this evidence.

Austin police officer Gerald Wines testified at the hearing that on August 1, 2001, he was working a traffic diversion due to construction at Highway 290 and Airport Boulevard. At about 4:00 a.m., he noticed a vehicle "proceeding on the turnaround towards my direction in the wrong way on a one-way." He testified that the vehicle "kept on coming towards the front of my car and towards me, and I was standing in front of my car. And it did not come to a complete stop. I actually had to put my hands on the hood to get the driver to stop it." Officer Wines said that the driver of the vehicle, a woman, smelled of alcoholic beverage and told him that she had been drinking. Wines did not identify appellant.

Officer William Dupre testified that he responded to Wines's call for assistance. He identified appellant as the driver of the vehicle in question. He said that he administered field sobriety tests to appellant after noticing the usual manifestations of intoxication. In his opinion, appellant failed these tests. He then arrested her for driving while intoxicated.

Appellant introduced at the hearing a county court at law judgment in Travis County cause number 617750. This document shows that at a bench trial held December 30, 2002, appellant was found not guilty of driving while intoxicated on August 1, 2001.[3] Appellant also introduced an

---

[3] The judgment states that Doty waived trial by jury but was found "not guilty by directed verdict." Officer Wines testified that he was never subpoenaed in cause number 617750. Officer Dupre testified that he received several subpoenas in that cause, but never testified. We infer that the "directed verdict" resulted from the State's failure to produce its witnesses.

order by the same court, dated January 24, 2003, expunging all records relating to appellant's August 1 arrest. *See* Tex. Code Crim. Proc. Ann. arts. 55.01-.02 (West 2005). The Austin Police Department and the Travis County District Attorney were two of the agencies named in the expunction order.

The lead prosecutor in the instant cause testified that a previous prosecutor had obtained a copy of the August 1 offense report before the expunction order was entered and had placed it in the case file. She said that she was personally unaware of the expunction order when she discovered the offense report and initially contacted Officer Wines. After learning of the order, she called Wines and told him that the offense report had been expunged and that he was not to review it.

Officer Wines testified that after the prosecutor contacted him in April 2003 and asked if he recalled the August 2001 incident, he obtained a copy of the offense report from the police department's computer. Wines testified that the report did not refresh his memory as to the details of the incident, which he remembered independently, but that it did "secure [his] thoughts." Some time thereafter, he was called by the prosecutor and told that the arrest records had been expunged and that he was not to look at the offense report again. Wines said that his testimony regarding the August 1 incident was based solely on his memory of the events.

Officer Dupre testified that he did not remember when he last saw the August 1 offense report. He testified that he had not seen the report since being contacted by the prosecutor "a few weeks" before the instant trial and that his testimony was based entirely on his memory of the incident.

At the conclusion of the hearing, the trial court noted that the officers' proffered testimony was clearly relevant to sentencing. *See id*. art. 37.07, § 3(a)(1) (West Supp. 2004-05). Because their testimony was based on their memories of the incident and did not depend on the expunged records, the court held that the officers would be permitted to testify to appellant's driving on the wrong side of the highway, her appearance and admission that she had been drinking, the administration of the field sobriety tests, and the results of those tests. The court ruled that evidence of appellant's arrest for driving while intoxicated was inadmissible.

### Collateral Estoppel

Under the Fifth Amendment collateral estoppel rule, "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson*, 397 U.S. 436, 443 (1970). In her second point of error, appellant asserts that the State was collaterally estopped from relitigating the issue of whether she drove while intoxicated on August 1, 2001.

Collateral estoppel operates only if the very fact or point in issue was determined in the prior proceeding. *Ex parte Taylor*, 101 S.W.3d 434, 441 (Tex. Crim. App. 2002). Issue preclusion is limited to cases where the legal and factual situations are identical. *Id*. In reviewing a collateral estoppel claim, both trial and appellate courts must examine the record of the prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matters to determine whether a rational factfinder could have grounded its decision on a fact other than the specific fact that the party now claims was resolved in her favor. *Guajardo v. State*, 109 S.W.3d 459-60 (Tex. Crim. App. 2003) (citing *Ashe v. Swenson*).

8

The only record introduced by appellant from her trial in cause number 617750 was the judgment of acquittal. Appellant's counsel also told the trial court that he had represented appellant in the earlier trial and had challenged her detention and arrest in a motion to suppress evidence. He added, however, that the court in the earlier trial "heard no evidence whatsoever concerning the issue of reasonable suspicion to detain or probable cause to arrest and found the defendant not guilty."

There is no evidence before us that appellant's acquittal in cause number 617750 was based on a finding that she did not drive on the wrong side of the highway at the intersection of Highway 290 and Airport Boulevard on the night of August 1, 2001, or that she had not been drinking at the time and place in question. Because these were the facts at issue in the instant cause, we hold that the court properly overruled appellant's collateral estoppel objection.

*Article 55.04*

Appellant also urges in her second point of error that the evidence regarding the August 1, 2001, incident should have been excluded because it was unlawfully obtained. Tex. Code Crim. Proc. Ann. art. 38.23(a) (West 2005). Appellant bases this claim on code of criminal procedure article 55.04, which provides:

> A person who acquires knowledge of an arrest while an officer or employee of the state or of any agency or other entity of the state or any political subdivision of the state and who knows of an order expunging the records and files relating to that arrest commits an offense if he knowingly releases, disseminates, or otherwise uses the records or files.

9

Tex. Code Crim. Proc. Ann. art. 55.04, § 1 (West Supp. 2004-05). Appellant argues that the lead prosecutor in this cause unlawfully used the expunged offense report to learn of and then secure the testimony of the two police officers. She further argues that Officers Wines and Dupre unlawfully used the expunged report to refresh their memories of the August 1 incident.

Under article 55.04, the use of an expunged record or file is unlawful only if the person using the file knows of the expunction order. The prosecutor testified without contradiction that she did not know about the expunction order when she discovered the August 1 offense report in her case file. Officer Wines also testified that he did not know about the expunction order when he retrieved the offense report on the police computer. There is no evidence that Officer Dupre ever looked at the offense report after the expunction order was entered, much less that he did so with knowledge of the order. Both officers testified that their trial testimony was based only on their memories of the events of August 1 and did not include any information gleaned from the offense report. *See Bustamante v. Bexar County Sheriff's Civil Serv. Comm'n*, 27 S.W.3d 50, 54 (Tex. App.—San Antonio 2000, pet. denied) (testimony describing officers' personal observations did not violate expunction order). Because no violation of article 55.04 by the prosecutor or officers was shown, article 38.23 did not require the suppression of the officers' testimony.

Finding both contentions to be without merit, we overrule point of error two.

### *Evidence of Acquittal*

In point of error three, appellant contends the trial court erred by refusing to allow her to introduce in evidence the judgment of acquittal in cause number 617750. The court ruled that such use of the judgment was impermissible under the terms of the expunction order. Appellant

10

does not dispute this ruling, as to which we express no opinion. Instead, she argues, as she did below, that the judgment was admissible under the doctrine of curative admissibility. This doctrine allows a party to introduce evidence that might otherwise be excluded to counter the unfair prejudicial use of similar evidence by the opposing party. *Leday v. State*, 983 S.W.2d 713, 716 (Tex. Crim. App. 1998). The admissibility of the evidence is based on the need to negate or explain—or "cure"—the earlier error, hence the term "curative admissibility." *Id*.

Appellant argues that the judgment of acquittal was admissible to meet, destroy, or explain the testimony of Officers Wines and Dupre. But we have overruled appellant's point of error challenging the introduction of this testimony. Without an earlier error to cure, the curative admissibility doctrine was not applicable. Because no other ground for admission was urged, no error is shown.[4] Point of error three is overruled.

### Mistrial Motion

The two officers' testimony before the jury substantially conformed to the earlier proffer and to the court's rulings. However, when Officer Dupre was asked how he was able to identify appellant as the person he observed on August 1, 2001, he answered, "Well, mainly for two reasons, one which I stated earlier. This is the last—one of the last DWI arrests I made before I left the street. It kind of stands out in my mind. Also—." Defense counsel interrupted the officer and, out of the jury's hearing, moved for a mistrial based on the officer's reference to the DWI arrest, which the court had ruled to be inadmissible. The court denied the mistrial motion but instructed

---

[4] Appellant did not assert the optional completeness rule at trial, nor does she raise it on appeal. *See* Tex. R. App. P. 107; *and see Sunberry v. State*, 88 S.W.3d 229, 234-35 (Tex. Crim. App. 2002); *Mendiola v. State*, 21 S.W.3d 282, 285 (Tex. Crim. App. 2000).

11

the jury to disregard "the last answer." In point of error four, appellant complains of the denial of the requested mistrial.

A mistrial is required when there is error so prejudicial that continuation of the trial would be futile. *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). As a general rule, testimony erroneously referring to an extraneous offense can be rendered harmless by an instruction to disregard. *Kemp v. State*, 846 S.W.2d 289, 308 (Tex. Crim. App. 1992). An instruction will be insufficient only if the evidence was so clearly calculated to inflame the minds of the jury or is of such damning character as to suggest the impossibility of removing the harmful impression from the jurors' minds. *Id*. The denial of a mistrial motion is reviewed for an abuse of discretion. *Ladd*, 3 S.W.3d at 567.

Contrary to appellant's argument in her brief, there is nothing in the record to support a finding that the prosecutor deliberately adduced the fact of her DWI arrest. The question she asked did not obviously call for this information. Only three pages earlier in the reporter's record, Dupre had mentioned in passing that "this was one of the last stops I made before I left patrol" and '[t]hat's one of the reasons why it stands out in my mind." The prosecutor may well have anticipated that the officer would say the same thing when asked directly why he remembered the incident.

We do not believe that the officer's reference to appellant's arrest was so prejudicial as to suggest the impossibility of removing the harmful impression from the jurors' minds. We are not persuaded that the instruction to disregard was insufficient or that the trial court abused its discretion by overruling the motion for mistrial. Point of error four is overruled.

The judgment of conviction is affirmed.

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed:   May 26, 2005

Do Not Publish