# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00803-CR

**The State of Texas, Appellant**

**v.**

**Rosanna Nicholson, Appellee**

## FROM THE COUNTY COURT AT LAW NO. 1 OF HAYS COUNTY
## NO. 72797, HONORABLE HOWARD S. WARNER, II, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

The State appeals an order granting appellee Rosanna Nicholson's motion to suppress evidence. *See* Tex. Code Crim. Proc. Ann. art. 44.01(a)(5) (West Supp. 2005). At issue is whether Nicholson's consent to the taking of a sample of her blood was shown to be voluntary. We will affirm the suppression order.

San Marcos Police Officer Dustin Slaughter testified that he was called to the scene of a "major vehicle accident" on the night of April 26, 2003. When he arrived, Nicholson was outside her car and being treated by paramedics. Before Nicholson was transported to the hospital, the officer spoke to her briefly and noticed the smell of alcoholic beverage on her breath. There is no other evidence regarding Nicholson's physical condition.[1]

---

[1] In its brief to this Court, the State refers to the hospital records filed with the clerk several months before the hearing pursuant to rule 902(10). Tex. R. Evid. 902(10). These records were not

Slaughter went to the hospital where Nicholson was being treated, advised her of her *Miranda* rights, and asked her for a specimen of her blood.**²** Pursuant to this request, the officer read to Nicholson the statutory consent form commonly referred to as the DIC-24 form. By this form, Nicholson was told that she was "under arrest for an offense arising out of acts alleged to have been committed while [she was] operating a motor vehicle . . . in a public place while intoxicated," and that if she refused to give the specimen, "[her] license, permit or privilege to operate a motor vehicle will be suspended or denied for not less than 180 days." *See* Tex. Transp. Code Ann. § 724.015 (West Supp. 2005). Slaughter testified that he made no other statements to Nicholson with respect to the consequences of refusing to give the specimen. After the DIC-24 form was read, Nicholson signed a written consent to the requested blood specimen.

Nicholson testified that she would not have signed the consent form if she had not been told that a refusal would result in the suspension of her driver's license. She added, "I had never been in trouble with the police before and I awoke to the officer in my room reading me my rights. And the way it seemed to me I had no other option."

The test of Nicholson's blood showed her to have an alcohol concentration of 0.22. Nicholson moved to suppress this test result on the ground that her consent to the blood draw was induced by the officer's misstatement of the consequences of a refusal and hence involuntary.

---

introduced in evidence at the hearing, and there is no indication that the court considered them in making its ruling.

**²** *See Miranda v. Arizona*, 384 U.S. 436 (1966). Officer Slaughter did not testify at the hearing regarding the odor on Nicholson's breath or his advising her of her rights. This information is found in the officer's affidavit in support of an arrest warrant issued in March 2004, which was introduced in evidence at the hearing by the defense.

2

Under the implied consent law, consent to the taking of a breath or blood specimen must be voluntary. *Erdman v. State*, 861 S.W.2d 890, 893 (Tex. Crim. App. 1993). If a driver's consent is induced by an officer's misstatement of the consequences flowing from a refusal to give a specimen, the consent is not voluntary. *Id*. at 894 (holding that officer's erroneous statement that Erdman would immediately be jailed and charged with driving while intoxicated if he refused to give specimen rendered consent involuntary); *State v. Sells*, 798 S.W.2d 865, 867 (Tex. App.—Austin 1990, no pet.) (holding that officer's erroneous statement that Sells would automatically be charged and incarcerated if he refused to give specimen rendered consent involuntary).

The implied consent law applies only to persons who are arrested for driving while intoxicated or related offenses. *Aliff v. State*, 627 S.W.2d 166, 168 (Tex. Crim. App. 1982); *Combest v. State*, 981 S.W.2d 958, 960 (Tex. App.—Austin 1998, pet. ref'd); *see* Tex. Transp. Code Ann. § 724.011(a) (West 1999) ("If a person is arrested . . . the person is deemed to have consented"), § 724.012(a) (West Supp. 2005) ("specimens . . . may be taken if the person is arrested"). It was undisputed at the hearing that Nicholson was not under arrest when the DIC-24 form was read and the blood specimen was taken. Thus, the provisions of the law suspending the driver's license of a person who refuses to submit to the taking of a specimen did not apply to Nicholson. *See* Tex. Transp. Code Ann. § 724.002 (West Supp. 2005).

The State relies on this Court's opinion in *Combest*. The facts in that case were roughly similar to those now before us: Combest was taken to a hospital following an automobile accident; he was suspected of driving while intoxicated but was not under arrest; he agreed to give a blood specimen after an officer read the DIC-24 form. *See* 981 S.W.2d at 960. Combest argued

3

on appeal that his consent to the blood draw was involuntary due to the officer's erroneous statement that a refusal would result in the suspension of his license. *Id*. at 961. After reviewing the totality of the circumstances, this Court concluded that Combest's consent was shown to be voluntary despite the officer's misstatement. *Id*. at 962.

There is a critical distinction between *Combest* and the case now before us. Combest did not testify at the hearing on his motion to suppress and there was no evidence that his agreement to give the blood specimen was influenced in any way by the erroneous information regarding the consequences of a refusal. *Id*. In fact, Combest's attorney told the trial court that the wording of the form warning was not an issue: "[T]here's no *Erdman* question here." *Id*. Nicholson, on the other hand, testified below that she would not have consented to the blood specimen had she not been told that her driver's license would be suspended if she refused. Thus, this case is analogous to *Sells*, where the defendant testified that he would not have agreed to give a specimen but for the officer's erroneous statement that he would immediately be jailed if he refused. *See Sells*, 798 S.W.2d at 866. This Court affirmed the order granting Sells's motion to suppress the test result on the ground that it had been induced by the officer's misstatement. *Id*. at 867.

When reviewing a trial court's ruling on a motion to suppress evidence obtained without a warrant, we defer to the court's factual determinations but review de novo the court's application of the law to the facts. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We review the evidence in the light most favorable to the court's ruling and, if the court did not make explicit findings of fact, we assume that the court made findings that are supported by the record and buttress its conclusion. *Carmouche v. State*, 10 S.W.3d 323, 327-28 (Tex. Crim. App.

4

2000). In this case, we assume that the trial court believed Nicholson's testimony regarding the coercive effect of the inapplicable DIC-24 form on her decision to give a blood specimen. Applying de novo the holdings in *Erdman* and *Sells*, we conclude that the State failed to prove that Nicholson's consent to the blood draw was voluntary.[3]

The order granting Nicholson's motion to suppress evidence is affirmed.

_____

Bea Ann Smith, Justice

Before Chief Justice Law, Justices B. A. Smith and Pemberton

Affirmed

Filed:   January 20, 2006

Do Not Publish

---

[3] Both *Erdman* and *Sells* were decided before the opinion in *Guzman* and employed a different standard of appellate review. *See Erdman v. State*, 861 S.W.2d 890, 893 (Tex. Crim. App. 1993) (applying abuse of discretion review); *State v. Sells*, 798 S.W.2d 865, 867 (Tex. App.—Austin 1990, no pet.) (same). Although we now employ the *Guzman* standard, the substantive holding of those opinions remains valid: a consent induced by a police officer's misstatement of the consequences of a refusal may render it involuntary.