# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-07-00235-CR

Craig Stephen Madeley, Appellant

v.

The State of Texas, Appellee

FROM COUNTY COURT AT LAW NO. 1 OF CALDWELL COUNTY
NO. 32983, HONORABLE EDWARD L. JARRETT, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

The State charged Craig Stephen Madeley with the Class A misdemeanor of driving while intoxicated (DWI). *See* Tex. Penal Code Ann. §§ 49.04(a), .09(a) (West 2003). Following the trial court's denial of Madeley's motion to suppress, Madeley pleaded guilty.[1] The court sentenced him to 365 days' confinement, probated for 24 months on the condition that he serve three days in jail, and a $1,500 fine. In one point of error, Madeley argues that the trial court erred by not suppressing oral statements he made at the hospital to a Department of Public Safety (DPS) trooper because the statements were not electronically recorded as mandated by the code of criminal procedure. *See* Tex. Code Crim. Proc. Ann. art. 38.22 (West 2005). Because we hold that Madeley

---

[1] At the same time, Madeley also pleaded guilty to the Class A misdemeanor of failure to appear, which is not before us on appeal.

was in custody at the time he made the oral statements at issue, and because such statements were not electronically recorded, we reverse and remand for new trial.

## BACKGROUND

On November 8, 2004, Madeley was involved in a one-car accident while traveling through Caldwell County, Texas.[2] Madeley was injured in the accident and was taken by ambulance to Brackenridge Hospital in Austin. The on-scene officer investigating Madeley's accident, DPS trooper David Miranda, suspected that the accident was caused by Madeley's unsafe speed and possible intoxication. Miranda contacted another DPS trooper, Jennifer Lopatowski, who was in Austin, and after explaining his suspicions to her, asked her to interview Madeley at the hospital.

Lopatowski located Madeley lying in a bed in one of the hospital's treatment rooms and asked him whether he remembered the accident. Madeley told Lopatowski that he did not remember much about the accident and complained about his injuries. Lopatowski noticed that Madeley's eyes were red and watery and that he had an odor of alcoholic beverage on his breath. After making these preliminary observations, Lopatowski read Madeley the DIC-24 form, which is a statutory warning that she had been trained to read before requesting blood or breath samples.[3] Lopatowski testified that she read the DIC-24 form "word-for-word, straight off the piece of paper," including the statement at the top of the form which reads, "You are under arrest for an offense arising out of acts alleged to have been committed while you were operating a motor vehicle or

---

[2] The facts recited herein are from the testimony and exhibits admitted at the pretrial suppression hearing.

[3] *See* Tex. Transp. Code Ann. § 724.015 (West Supp. 2007).

water-craft in a public place while intoxicated . . . ." The form goes on to warn the person under arrest that if he does not consent to giving a breath or blood sample, his license will be suspended for at least 180 days. The DIC-24 form also includes a blank for the officer to fill in the date and time of arrest, which Lopatowski listed as November 8, 2004 at 9:45 a.m.

Madeley did not agree to provide a blood or breath specimen. Trooper Lopatowski then performed the horizontal gaze nystagmus (HGN) test to check Madeley's eyes for nystagmus. At some point, Lopatowski read Madeley his *Miranda* warnings[4] and conducted an interview asking him numerous questions including whether he had been intoxicated at the time he was driving the motor vehicle. Madeley responded affirmatively, stating that he had been drinking beer. Lopatowski noted Madeley's responses on a form labeled, "DWI Interview with Legal Warnings." At the bottom of the form is a blank line labeled, "Signature of person arrested." There, Lopatowski noted that Madeley had refused to sign and that he could not sign due to his injuries. She also listed the time of the interview as 10:12 a.m. After completing the interview, which was not electronically recorded, Lopatowski told Madeley that Trooper Miranda was investigating the accident and would be contacting him with any further questions. Lopatowski then left the hospital, while Madeley remained in the hospital bed. Madeley was not handcuffed at any point during his encounter with Lopatowski. At the suppression hearing, Lopatowski testified that while she did not think Madeley was under arrest at the time she interviewed him, she also never informed him that he was not under arrest.

---

[4] *Miranda v. Arizona*, 384 U.S. 436 (1966).

In a pretrial motion, Madeley moved to suppress all statements and other incriminating evidence obtained as a result of the hospital interview on the ground that his statements at the hospital were inadmissible under article 38.22 of the code of criminal procedure because they were the product of a custodial interrogation, were incriminating in nature, and were not electronically recorded. The trial court denied the motion to suppress, and this appeal followed.

## STANDARD OF REVIEW

The appropriate standard of review for a suppression ruling is a bifurcated review, giving almost total deference to the trial court's findings of fact, but conducting a de novo review of its application of law to those facts. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002); *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000) (citing *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000)); *Guzman v. State*, 955 S.W.2d 85, 88-89 (Tex. Crim. App. 1999). We review de novo "mixed questions of law and fact" that do not turn on credibility and demeanor. *Guzman*, 955 S.W.2d at 89. The facts in the present case are undisputed. Thus, we will review de novo the question of whether Madeley was in custody at the time his oral statements were made.

## DISCUSSION

Madeley contends on appeal that the trial court erred by refusing to suppress his incriminating statements acquired at the hospital because it was the product of custodial interrogation and was not electronically recorded as required by article 38.22. The State contends that Madeley was not arrested or in custody at the time he made the statements and therefore article 38.22 does not apply.

4

An oral statement made by the accused during a custodial interrogation is inadmissible in a criminal proceeding against him unless an electronic recording of the statement is made after the accused has been given and waived the *Miranda* warnings. Tex. Code Crim. Proc. Ann. art. 38.22, § 3; *see State v. Lacy*, 80 S.W.3d 207, 209 (Tex. App.—Austin 2002, no pet.) ("An oral confession of guilt or an oral admission against interest made by one in custody is inadmissible evidence as the statement is likely to be misunderstood, easily fabricated, and hard to contradict."). Here, it is undisputed that Madeley's incriminating statements were unrecorded. Therefore, if Madeley was in custody when his statements were made, the statements were inadmissible and should have been suppressed.

**Custodial Interrogation**

A custodial interrogation is the questioning by law-enforcement officers after taking a person into custody or otherwise depriving him of his freedom in a significant way. *Cannon v. State*, 691 S.W.2d 664, 671 (Tex. Crim. App. 1985). In determining whether an individual was in custody, courts examine the objective circumstances surrounding the interrogation. *Dowthitt v. State*, 931 S.W.2d 244, 255 (Tex. Crim. App. 1996). A person is in custody only if, under the circumstances, a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest. *Id*. at 254; *see also Stansbury v. California*, 511 U.S. 318, 322 (1994).

The facts in the present case are strikingly similar to those presented to this Court in *Nottingham v. State*, 908 S.W.2d 585 (Tex. App.—Austin 1995, no writ). There, the DPS trooper interviewed the driver only after she had been taken to a hospital for treatment of injuries sustained

5

in a car accident. *Id*. at 587. The trooper smelled an intoxicating beverage coming from her breath and formed the opinion that she was intoxicated. *Id*. He asked her questions about her drinking and she acknowledged that she had consumed "one beer and one shot." *Id*. At this point, the trooper administered the HGN test and read the driver the DIC-24 form, including the warning that states, "You are under arrest for the offense of Driving While Intoxicated." *Id*. While the officer testified that he did not consider her to be under arrest at this time, this Court found:

> While the officer might have considered the language of the DIC-24 form to be merely a formality, a reasonable person in appellant's position would believe that she was not free to leave after being told by a police officer that she was under arrest. *We hold that under the circumstances presented, appellant was arrested at the point when the officer, pursuant to the DIC-24, told appellant she was under arrest for driving while intoxicated.*

*Id*. at 588 (emphasis added); *see also Bell v. State*, 881 S.W.2d 794, 799-800 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd) (defendant considered under arrest when taken to hospital following car accident, where he was interviewed by police, sobriety tests were conducted, and officer read the DIC-24 form to him); *State v. Williams*, 814 S.W.2d 256, 259-60 (Tex. App.—Austin 1991), *aff'd*, 832 S.W.2d 52 (Tex. Crim. App. 1992) (evidence that police read DIC-24 form at hospital to defendant supported trial court's implied finding that defendant was under arrest even though officer said defendant was only being investigated).

Rather than attempting to distinguish the present case from *Nottingham*, *Bell*, or *Williams*, the State relies solely on *Combest v. State*, 981 S.W.2d 958 (Tex. App.—Austin 1998, pet. ref'd), to support its claim that Lopatowski's reading of the DIC-24 form and *Miranda* warnings are insufficient to establish that Madeley was subject to custodial interrogation. In *Combest*, the

6

trooper interviewed the injured driver at the scene of the accident and again later at the hospital, where he asked the driver for a blood specimen. *Id*. at 960. The trooper testified that he had not yet made any determination of whether the defendant was intoxicated and wanted to wait for the blood test results. *Id*. Before obtaining the blood specimen, the trooper read the DIC-24 form and gave the driver *Miranda* warnings. *Id*. The trooper then informed the driver that if he passed the blood test "he probably would not hear from me on it." *Id*. In any event, both the defendant and the State stipulated that the defendant "was not under arrest nor in custody at the time he consented to give the blood specimen." *Id*. Thus, in *Combest*, the issue of whether or not it would have been reasonable for the driver to think he was under arrest or in custody at the time he provided the incriminating evidence was never considered by the court. In the present case, however, the parties dispute whether Madeley was under arrest or in custody at the time he gave the incriminating statements. As a result, we find the State's reliance on *Combest* to be unpersuasive.

Madeley was lying in a hospital bed, shortly after being injured in a motor-vehicle accident, when Lopatowski, a DPS trooper, informed him that he was under arrest for DWI.[5] After conducting the HGN test, Lopatowski provided Madeley with *Miranda* warnings and then proceeded to interview him. We hold that a reasonable person, injured and lying in a hospital bed, hearing a DPS trooper state the words "you are under arrest" could conclude that he was not free to leave and that he was in fact under arrest. *See Nottingham*, 908 S.W.2d at 588; *Bell*, 881 S.W.2d at 800;

---

[5] While the trooper testified that she did not consider Madeley to be under arrest, there was no evidence that the trooper ever advised Madeley that he was not under arrest. "In determining whether custody exists, the subjective intent of law-enforcement officials to arrest is irrelevant, unless the intent is communicated or manifested to the suspect in some way." *Ramirez v. State*, 105 S.W.3d 730, 738 ( Tex. App.—Austin 2003, no pet.).

*Williams*, 814 S.W.2d at 259-60.  These facts establish that Madeley was in custody at the time he made the incriminatory statements at issue.  Because such statements were not electronically recorded as required by article 38.22, they were inadmissible and should have been suppressed.

## CONCLUSION

Because Madeley was in custody at the time he made incriminating statements that were not electronically recorded, we hold that all statements he made to Lopatowski while in the hospital should have been suppressed.  We reverse the trial court's order and remand for a new trial.

_____

Diane Henson, Justice

Before Justices Patterson, Puryear and Henson

Reversed and Remanded

Filed:   February 21, 2008

Do Not Publish

8